■ HSBC Bank USA, Plaintiff, and Janet S. Bordages et al., Respondents, v Bond, Schoeneck & King, PLLC, et al., Appellants. [866 NYS2d 469]—

Appeals from an order of the Supreme Court, Erie County (John M. Curran, J.), entered August 9, 2007. The order, insofar as appealed from, denied in part defendants' motions to dismiss the amended complaint (16 Misc 3d 813 [2007]).

It is hereby ordered that the order insofar as appealed from is unanimously reversed on the law without costs, the motions are granted in their entirety and the amended complaint is dismissed.

Memorandum: Plaintiffs-respondents (plaintiffs) and plaintiff HSBC Bank USA (HSBC) commenced this action seeking, inter alia, implied indemnification from defendants for sums they paid in defending and settling claims asserted against them in the federal class action entitled *Beam v HSBC Bank USA* (hereafter, *Beam* action). We note at the outset that the causes of action asserted by HSBC were subsequently dismissed, and it therefore is no longer a party.

In September 1999, plaintiffs sold their shares of Azon Corporation stock for $25 million to the Azon Employee Stock Ownership Plan (ESOP). At the time of the sale of the stock (transaction), four plaintiffs were members of the Board of Directors of Azon and, as a result of the transaction, the ESOP increased its ownership of Azon from 19% to 57%. Defendant Bond, Schoeneck & King, PLLC (BS & K) were the attorneys who represented the ESOP in the transaction, and defendant Coughlin & Gerhart LLP (C & G) served as counsel to Azon. Also as part of the transaction, the treasurer and chief financial

officer of Azon and its president and chief executive officer received retention bonuses equal to the amount of their annual salaries, pursuant to the terms of their prior employment agreements. Those employment agreements provided that the two officers would be entitled to such bonuses in the event that there was a change in control of Azon and that they "fully support[ed] and assist[ed] in the implementation of the process."

In July 2002, Azon went bankrupt, and its current and former employees thereafter filed the *Beam* action. The *Beam* plaintiffs alleged that the ESOP transaction constituted a nonexempt prohibited transaction under the Employee Retirement Income Security Act of 1974 (ERISA) because the shares had allegedly been improperly valued and that the plaintiffs herein had allegedly received more for their shares than the value of the shares. After settling the *Beam* action for $9,000,000, plaintiffs and HSBC commenced this action, whereupon BS & K moved to dismiss the amended complaint against it pursuant to CPLR 3211 (a) (5) and (7), and C & G moved to dismiss the amended complaint against it pursuant to CPLR 3211 (a) (1), (5) and (7). Supreme Court granted the motions only in part, and we agree with defendants that the court should have granted their motions in their entirety.

With respect to the first cause of action, for implied indemnification, plaintiffs and HSBC alleged that they were subject to strict liability in the *Beam* action under ERISA if the ESOP transaction was a prohibited transaction, and defendants must indemnify them because defendants were responsible for determining whether the ESOP transaction would be deemed a prohibited transaction. Plaintiffs and HSBC further alleged that defendants therefore were required to indemnify them because they were placed "in a legally untenable position in which they were required to . . . participate in a settlement with the *Beam* plaintiffs so as to avoid the draconian liabilities and penalties that they would incur if the payments to [the two officers] were judicially determined to be impermissible commissions."

Pursuant to 29 USC § 1106 (a), transactions between an employee benefit plan and a "party in interest" are generally prohibited. Nevertheless, the provisions of section 1106 "shall not apply to the acquisition or sale by a plan of qualifying employer securities . . . (1) if such acquisition . . . is for adequate consideration . . . , (2) if no commission is charged with respect thereto, and (3) if . . . the plan is an [ESOP]" (29 USC § 1108 [e]; *see* 29 USC § 1107 [d] [3] [A]). A "commission" under section 1108 includes "any fee, commission or similar charge paid in connection with a transaction" (29 CFR 2550.408e [e]).

We agree with defendants that the court erred in denying those parts of their motions to dismiss the first cause of action. " 'Where a party voluntarily settles a claim, he must demonstrate that he was legally liable to the party whom he paid and that the amount of [the] settlement was reasonable in order to recover against an indemnitor' " (*Van Epps v Town of Verona* [appeal No. 2], 305 AD2d 1035, 1036 [2003]). Thus, "[a] party [who] voluntarily settles an action without being legally liable may not obtain indemnification from a third party for the amount of the settlement" (*Midura v 740 Corp., LLC*, 31 AD3d 401, 401 [2006]). Here, plaintiffs are relying on a theory of liability that was not pleaded by the *Beam* plaintiffs. The *Beam* plaintiffs alleged that the ESOP transaction was a prohibited transaction under ERISA because the stocks were overvalued and thus the transaction was not for adequate consideration, while plaintiffs and HSBC alleged in the first cause of action that they were liable to the *Beam* plaintiffs because the ESOP transaction was prohibited under ERISA inasmuch as there were commissions charged with respect thereto, i.e., the retention bonuses paid to two officers of Azon. Indeed, plaintiffs and HSBC alleged that the claims of overvaluation were defensible. We thus conclude that the plaintiffs failed to establish that they were ever legally liable to the *Beam* plaintiffs.

To the extent that the first cause of action may be deemed to include a claim for contribution, we further conclude that the court erred in denying those parts of defendants' motions to dismiss that claim. General Obligations Law § 15-108 (c) provides that "[a] tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person," and that "statutory bar to contribution may not be circumvented by the simple expedient of calling the claim indemnification" (*Rosado v Proctor & Schwartz*, 66 NY2d 21, 25 [1985]). We further conclude that the court erred in sua sponte analyzing whether plaintiffs stated a contribution claim under the federal law (*see generally Clarke v Davis*, 277 AD2d 902 [2000]).

In any event, even assuming, arguendo, that General Obligations Law § 15-108 is not applicable to plaintiffs' contribution claim, we conclude that it fails to state a cause of action (*see* CPLR 3211 [a] [7]). "While ordinarily contribution rights arise when damages are sought to be apportioned among tort-feasors each of whom owes a duty directly to the injured party, this is not invariably so. In the unusual case the right to apportionment may arise from the duty owed from the contributing party to the party seeking contribution" (*Guzman v Haven Plaza*

*Hous. Dev. Fund Co.*, 69 NY2d 559, 568 n 5 [1987]). "[A] claim of contribution may be asserted if there has been a breach of duty that runs from the contributor to the defendant who has been held liable" (*Raquet v Braun*, 90 NY2d 177, 182 [1997]). "The 'critical requirement' for apportionment by contribution under CPLR article 14 is that 'the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought' " (*id.* at 183, quoting *Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.*, 71 NY2d 599, 603 [1988]).

According to plaintiffs and HSBC, defendants breached a duty owed to them by failing to advise them that the ESOP transaction was a prohibited transaction under ERISA based on the improper commissions, and they would not have settled with the *Beam* plaintiffs had they not believed that they were liable because of the improper commissions. We agree with defendants that plaintiffs failed to establish an ERISA violation based on improper commissions. Pursuant to 29 CFR 2550.408e (a) (2), "[n]o commission may be charged directly or indirectly to the [ESOP] with respect to [a] transaction [pursuant to 29 USC § 1108]." The amended complaint alleges that the retention bonuses paid to the two officers of Azon were pursuant to employment agreements entered into more than one year prior to the ESOP transaction and before the stock sale to the ESOP was contemplated. The amount of the bonuses was not determined based on the amount paid by the ESOP for the stock but, rather, it was determined based solely on the employment agreements. In addition, plaintiffs and HSBC alleged that the payments were made by Azon, not the ESOP, and they did not allege the bonuses were charged directly or indirectly to the ESOP.

We further conclude that the court erred in denying those parts of C & G's motion to dismiss the second cause of action, for legal malpractice, and the fourth cause of action, for negligent misrepresentation. According to plaintiffs, C & G failed to advise them of the likelihood that the ESOP transaction was a prohibited transaction because of the improper commissions and that its representations that the transaction was proper and legal were inaccurate. Inasmuch as plaintiffs failed to establish that the retention bonuses were indeed improper commissions pursuant to ERISA, they failed to state a cause of action against C & G for legal malpractice (*see generally McCoy v Feinman*, 99 NY2d 295, 301-302 [2002]), or for negligent misrepresentation (*see generally Dunlevy v New Hartford Cent. School Dist.*, 266 AD2d 931, 932 [1999], *lv denied* 94 NY2d 760 [2000]). Present—Hurlbutt, J.P., Smith, Centra and Gorski, JJ. [*See* 16 Misc 3d 813 (2007).]