08-5052-ag
Jennifer Matthew Nursing v. U.S. Dep't of Health and Human Services

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: October 1, 2009
Supplemental Briefing Received:  October 30, 2009
Decided:  June 18, 2010)

Docket No. 08-5052-ag

---------------------------------------

JENNIFER MATTHEW NURSING AND REHABILITATION CENTER,

Petitioner,

- v. -

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

Respondent.[*]

---------------------------------------

Before:   SACK, LIVINGSTON, and LYNCH, Circuit Judges.

Petition for review of a ruling by the Appeals Board of the United States Department of Health and Human Services affirming the decision of an Administrative Law Judge that upheld the assessment of an $80,000 civil monetary penalty for regulatory violations imposed by the Centers for Medicare and Medicaid Services against a certified nursing facility formerly owned and operated by the petitioner.  During the pendency of the administrative proceedings, the facility was sold by the petitioner to a new owner-operator.  Subsequent to the filing of

---

[*]  The Clerk is directed to amend the caption accordingly.

this petition, the new owner-operator satisfied the civil monetary penalty assessed against the facility.  We dismiss the petition for review as moot.

Petition dismissed.

JOSEPH L. BIANCULLI, Health Care Lawyers, PLC, Arlington, VA, for Petitioner.

ABBY C. WRIGHT, Appellate Staff Attorney, Civil Division, Department of Justice, for Tony West, Assistant Attorney General (Mark B. Stern, on the brief), for Respondent.

SACK, Circuit Judge:

Petitioner Jennifer Matthew Nursing and Rehabilitation Center ("Jennifer Matthew"), the former owner and operator of a nursing facility of the same name in Rochester, New York, petitions for review of a ruling by the Appeals Board (the "Board") of the United States Department of Health and Human Services ("HHS" or the "Agency"), affirming the decision of an Administrative Law Judge ("ALJ") that upheld the assessment of an $80,000 civil monetary penalty by the Centers for Medicare and Medicaid Services ("CMS") against the facility for regulatory violations.  During the pendency of the administrative proceedings, the facility was sold by the petitioner.  Subsequent to the filing of this petition for review, the new owner-operator made a payment to CMS in satisfaction of the penalty assessed against the facility.

The parties dispute whether the petitioner had standing under Article III of the United States Constitution to bring this

2

petition at the time it was filed in light of the prior sale of the facility to another owner-operator. They also dispute the merits of the penalty imposed against the facility by CMS. We need not reach either of these questions, however, because we conclude that the satisfaction of the penalty by the facility's current owner-operator, from which CMS sought payment, has rendered this petition moot. We therefore lack jurisdiction over the petition and dismiss it on that basis.

**BACKGROUND**

"Jennifer Matthew Nursing and Rehabilitation Center" was, until July 2006, the name of a skilled nursing facility located in Rochester, New York. It was also the trade name or "d/b/a" of the original owner-operator of that facility, a closely-held corporation by the name of NRNH, Inc. In February 2006, the original owner-operator sold the facility and ceased using the Jennifer Matthew name. Throughout the administrative record and the proceedings before this Court, however, the original owner-operator, who is the petitioner here, is often referred to as "Jennifer Matthew Nursing and Rehabilitation Center" or "Jennifer Matthew," even though it no longer owns the facility and is in fact a separate entity incorporated under a different name. We accordingly refer to the original owner-operator hereinafter as "Jennifer Matthew" or "NRNH," and to the rehabilitation center as the "Jennifer Matthew facility."

3

The Jennifer Matthew facility participated in the Medicare program. In order to participate, it entered into a provider agreement with the administrator of that program, the Centers for Medicare and Medicaid Services ("CMS"), one of eleven operating divisions of HHS. See United States Department of Health & Human Services Homepage, http://www.hhs.gov/about (last visited June 7, 2010). Participants in the Medicare program are required to remain in "substantial compliance" with various statutes and agency regulations. Compliance is "substantial" to the extent that any failure to meet the participation requirements gives rise to no more than a risk of "minimal harm" to the health or safety of a provider's residents. See 42 C.F.R. § 488.301. If a provider's non-compliance causes a greater risk of harm, CMS has the authority to, among other things, impose a civil monetary penalty against the provider. See 42 C.F.R. §§ 488.404, 488.406, 488.408.

In June 2005, the New York State Department of Health investigated the Jennifer Matthew facility following an anonymous complaint from within the facility that one of its residents had choked to death without receiving appropriate aid from the staff. On July 21, 2005, CMS issued a determination, based mostly on the investigation by the Department of Health, that for eight days in July 2005, the Jennifer Matthew facility had failed to remain in substantial compliance with various regulations, including regulations governing conduct relating to the choking death. It

4

also cited sub-par care that the facility had provided to its residents during a heat wave that had prevailed for those eight days.[1] CMS imposed a civil monetary penalty of $80,000 against the facility, $10,000 for each day.

The facility protested the penalty and requested an administrative hearing. Proceedings before the ALJ ensued, but the case was remanded to CMS on the consent of the parties for reasons not relevant here.

On July 18, 2006, CMS issued a revised determination that cited additional regulatory violations by the Jennifer Matthew facility and retained the $80,000 penalty. The case was returned to the ALJ who, in rulings dated February 15 and December 27, 2007, upheld the CMS findings in relevant part, and the $80,000 penalty. The Board issued a Final Decision on August 21, 2008, affirming the rulings of the ALJ.

Meanwhile, in February 2006, while the administrative proceedings were ongoing, NRNH agreed to sell the Jennifer Matthew facility to an unrelated entity, Blossom North, LLC ("Blossom North"), pursuant to a purchase and sale agreement entered into by the parties that month (the "Purchase and Sale Agreement"). The sale closed in July 2006. The intangible property acquired by Blossom North in the transaction included

---

[1] Although the choking incident occurred in June, CMS seems to have been of the view that for at least those eight days in July, the systemic flaws that made the choking incident possible went unremedied.

the name "Jennifer Matthew Nursing and Rehabilitation Center." The facility was nonetheless renamed "Blossom North Nursing & Rehabilitation Center" (the "Blossom North facility") by its new owner.

The Purchase and Sale Agreement provided in relevant part that "any health facility assessment liabilities, relating to services rendered by, or the operation of, the Facility [under Jennifer Matthew's ownership and operation]," "shall be retained and satisfied by Seller, shall not be assumed by Buyer, and are expressly excluded from the Assumed Liabilities." Resp't Supp. Br., Ex. A § 1.04(b). The agreement also provided that the seller "shall be solely responsible for the satisfaction of all Retained Liabilities." Id. § 6.01. And it contained a "Survival and Indemnification" clause reading: "Seller hereby agrees to indemnify . . . Buyer . . . from and against all . . . liabilities . . . suffered by Buyer . . . on account of . . . the ownership and operation of the Facility [under Jennifer Matthew] (except with respect to . . . liabilities of Seller expressly assumed under this Agreement) . . . ." Id. § 10.01.

Thus, after the acquisition, there was no longer a "Jennifer Matthew Nursing and Rehabilitation Center" in existence. NRNH was no longer entitled to the use of that name, pursuant to the terms of the Purchase and Sale Agreement, and appears to have stopped using that name altogether. The Agency nevertheless permitted NRNH, continuing to appear as "Jennifer

6

Matthew Nursing and Rehabilitation Center," to pursue its appeal of CMS's determination to the ALJ and the Board. And the administrative rulings following the acquisition make no mention of the renaming of the facility as "Blossom North Nursing & Rehabilitation Center," continuing to speak in terms of upholding a monetary penalty against "Jennifer Matthew Nursing and Rehabilitation Center."

This petition for review was filed with the Clerk of this Court on October 14, 2008, by "Jennifer Matthew Nursing and Rehabilitation Center." Although the petitioner referred to itself there and in its initial brief to this Court as the Jennifer Matthew facility, see Pet'r Br. 1 ("Petitioner is a . . . certified nursing facility"), neither the actual facility nor the corporation that, by then, owned and operated it, Blossom North, petitioned for review. We therefore understand the petitioner to be the former owner-operator of the facility, NRNH, despite its continued use of the Jennifer Matthew name. We accordingly refer to the petitioner as "Jennifer Matthew" or "NRNH."

In its initial brief, filed on March 17, 2009, Jennifer Matthew discussed only the merits of its challenge to the civil monetary penalty. In the mandatory corporate disclosure statement included in its brief, Jennifer Matthew asserted that the facility "is currently owned and operated under a different name by an unrelated third party, . . . which is [not] affected by this appeal." Pet'r Br., Corporate Disclosure Stmt.

7

On April 14, 2009, six months after this petition was filed, CMS sent a letter to the administrator at Blossom North Nursing & Rehabilitation Center -- previously the Jennifer Matthew facility. Despite the fact that the Agency had referred only to the "Jennifer Matthew" facility during the administrative proceedings, this letter referred to the civil monetary penalty "imposed on Blossom North Nursing & Rehabilitation Center (formerly known as Jennifer Matthew Nursing & Rehabilitation Center)," and "inform[ed] [the administrator] that the [penalty was] due and payable on May 9, 2009." Resp't Supp. Br., Ex. C at 1. The letter advised: "[Y]our facility did not waive its right to a hearing . . . . Your facility requested a hearing and subsequently a review of the [ALJ's] decision to uphold the imposition of the [penalty]. The final decision of the [Board] affirms the ALJ's decision to uphold the imposition of the [penalty]." Id. The letter made no mention of the Blossom North facility petitioning for review of the Board's ruling. Neither the Blossom North facility nor Blossom North challenged the Board's ruling.

Two weeks after the date of the letter, CMS sent a follow-up letter to the administrator of the Blossom North facility amending the amount due on the penalty to reflect a thirty-five percent reduction, from $85,700 to $55,705 -- even though the previous letter had indicated no such reduction was

8

available.[2]  Id. Ex. D at 1.  On May 7, 2009, Blossom North -- the owner-operator of the Blossom North facility -- issued a check to CMS in satisfaction of the penalty, as reduced.  Id. Ex. E.

Thereafter, on June 30, 2009, the Agency filed its answering brief in this Court.  It argued, among other things, that Jennifer Matthew lacked standing to bring this petition at the time it was filed because, under the administrative regulations, "[c]ivil monetary penalties for noncompliance are imposed on the facility, and these monetary penalties follow the provider agreement when it is transferred to a new owner and operator."  Resp't Br. 12 (internal citation omitted, emphasis in original).  Thus, according to the Agency, under those administrative regulations, the facility, owned and operated by and under the name of Blossom North, was solely liable for the penalty.  The penalty therefore did not represent a cognizable injury to the Jennifer Matthew facility, nor to its former owner-operator, for Article III standing purposes.  Curiously, the Agency failed to mention that Blossom North had already paid the penalty, upon CMS's request for payment from the Blossom North facility.

We ordered supplemental briefing from the parties on the issue of standing, including information as to whether and under what conditions the civil monetary penalty had been paid.

---

[2] The record does not contain an explanation of the reason the reduction was granted.

The briefs recounted the essentially undisputed sequence of events described above relating to the sale of the Jennifer Matthew facility and the satisfaction of the civil monetary penalty by Blossom North.

In its supplemental brief, Jennifer Matthew argues that it has standing to bring this petition notwithstanding the sale of the facility and the satisfaction of the penalty because Blossom North could seek indemnification from it under the Purchase and Sale Agreement. It also argues that CMS's regulations are "immaterial" and that CMS should not be permitted to "divest this Court of jurisdiction" by "reserving to itself the right to collect a penalty imposed against a provider from someone else, even the provider's successor." Pet'r Supp. Br. 11-12.

The Agency, in its supplemental brief, maintains that Jennifer Matthew "never had standing to proceed in federal court" because the sale of the facility from Jennifer Matthew to Blossom North, which preceded the filing of this petition for review, "removed liability from petitioner and placed it on the new provider." Resp't Supp. Br. 7 n.1.

**DISCUSSION**

I. Subject Matter Jurisdiction

"[W]e have an independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte." Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006), cert. denied,

10

549 U.S. 1282 (2007). Our inquiry to ascertain whether we have subject matter jurisdiction ordinarily precedes our analysis of the merits. See Steel Co. v Citizens for a Better Env't, 523 U.S. 83, 94 (1998). Part of this inquiry requires us to determine whether a plaintiff has standing under Article III to pursue its claim, see, e.g., Bennett v. Spear, 520 U.S. 154, 162 (1997), an issue that the parties addressed in their supplemental briefing.

We must also ensure, however, that there remains a live controversy for us to decide. "Accordingly, when, during the pendency of an appeal, events occur that would prevent the appellate court from fashioning effective relief, the appeal should be dismissed as moot." In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir. 1993). "We may resolve the question whether there remains a live case or controversy . . . without first determining [the issue of] standing to appeal because the former question, like the latter, goes to the Article III jurisdiction of this Court . . . , not to the merits of the case." Arizonans for Official English v. Ariz., 520 U.S. 43, 66-67 (1997).

II. The Petition for Review is Moot

In this case, events that occurred subsequent to the filing of the petition for review have rendered the petition moot.

11

As of the date on which the petition for review was filed, CMS had imposed, and the ALJ and the Board had upheld, a civil monetary penalty on the Jennifer Matthew facility. The facility had, by that time, ceased to exist as the Jennifer Matthew Nursing and Rehabilitation Center, having been sold and renamed, but the administrative decisions at issue omitted any mention of the sale and persisted in referring to the infractions by and punishment of the "Jennifer Matthew Nursing and Rehabilitation Center." Thus the owner-operator of the facility during the time period it had been known as the "Jennifer Matthew" facility may well have thought that it was expected to pay the outstanding penalty.[3] Whether the sale of the facility rendered that belief incorrect as a matter of law under the Agency regulations, as the Agency argues, and whether that would strip Jennifer Matthew of any cognizable injury for purposes of Article III standing, are questions that we need not address in light of the events that followed.

After the petition for review was filed, CMS sent two letters to the Blossom North facility asserting that it considered the penalty at issue to have been "imposed on [the] Blossom North [facility] (formerly known as [the] Jennifer Matthew [facility])," and requesting payment from the Blossom

---

[3] Although civil monetary penalties, as the Agency points out, are assessed directly against a provider facility, rather than its owner-operator, the check issued to CMS by Blossom North, rather than the Blossom North facility, makes plain that the owner-operator of a facility may be the party that actually pays the penalty.

North facility. Blossom North then made the requested payment. The penalty that Jennifer Matthew contested before the ALJ and the Board, and that it seeks to contest on this petition for review, has therefore been satisfied, albeit not by the petitioner. CMS no longer seeks to collect the paid-in-full penalty.[4]

"An appeal becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Dennin v. Conn. Interscholastic Athletic Conference, Inc., 94 F.3d 96, 100 (2d Cir. 1996) (internal quotation marks omitted). There is no longer a live controversy between Jennifer Matthew and the Agency. Jennifer Matthew petitions for review of a penalty that it is not being asked to pay, that has since at least April 14, 2009 -- the date of the first letter from CMS to the Administrator of the Blossom North facility -- been assessed against a different entity, and that has been paid by that entity. Nothing has been taken from the petitioner Jennifer Matthew by the Agency and the Agency is no longer asking anything of Jennifer Matthew.

Jennifer Matthew (NRNH) seeks to pursue this petition on the merits nonetheless, apparently in fear of a possible indemnification suit against it by Blossom North. But no such

---

[4] There is no suggestion in the briefs or the record that because CMS imposed upon Blossom North, and collected, a reduced payment amount, it could seek an additional amount from Jennifer Matthew.

13

suit is pending before us on appeal, and there is no indication that such a suit has even been filed, or that it will be filed.

We understand Jennifer Matthew's desire for a judgment in its favor here to head off a future suit by Blossom North. Cf. HSBC Bank USA v. Bond, Schoeneck & King, PLLC, 55 A.D.3d 1426, 1428, 866 N.Y.S.2d 469, 471 (4th Dep't 2008) ("Where a party voluntarily settles a claim, he must demonstrate that he was legally liable to the party whom he paid . . . in order to recover against an indemnitor." (internal quotation marks and citation omitted)). And such a judgment might, alternatively, prompt Blossom North to seek recovery of the penalty from CMS, assuming such an action were permissible after payment has already been made without being challenged by the paying entity. But whether Jennifer Matthew might thus benefit from an advisory opinion is irrelevant. "[A] federal court lacks the power to render advisory opinions." U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., 508 U.S. 439, 446 (1993) (internal quotation marks omitted, alteration incorporated). And any decision we were to issue on the merits of the civil monetary penalty would be strictly advisory, because the penalty has already been paid and Blossom North, the entity that paid the penalty, has not challenged it. See United States v. Balint, 201 F.3d 928, 936-37 & n.2 (7th Cir. 2000) (concluding that challenge by non-paying defendants to restitution penalty already satisfied by co-defendant was moot, despite possibility of contribution action against them by paying co-defendant: "[T]he defendants'

14

vulnerability to a future civil suit for contribution by a third party not before us does not preserve this appeal" (emphasis in original)).

Jennifer Matthew argues in its supplemental brief that Blossom North lacked an incentive to challenge the penalty in federal court because it could, instead, bring suit against Jennifer Matthew for indemnification. See Pet'r Supp. Br. 12 (lamenting that Blossom North "thr[ew] in the towel"). Perhaps it can use that argument in future litigation, if any, against it by Blossom North, or perhaps it could have bargained for the inclusion of protection against that eventuality in the Purchase and Sale Agreement. Jennifer Matthew's possible predicament does not, however, serve as a basis for our exercising jurisdiction here.

We have considered the remainder of Jennifer Matthew's arguments, which appear to center on the contention that it is unfair for the Agency, under its regulations, to collect the civil monetary penalty from Blossom North and thus deprive Jennifer Matthew of recourse to this Court, but conclude that they offer no basis upon which we can exercise jurisdiction over this petition.[5]

## CONCLUSION

For the foregoing reasons, we dismiss Jennifer Matthew's petition for review as moot.

---

[5] Jennifer Matthew does not contest that the Agency was entitled, under the regulations, to collect the penalty from Blossom North.