08-4804-cv; 09-1345-cv
City of New York v. A-1 Jewelry & Pawn, Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued:  March 11, 2010     Final Submission:  April 20, 2010

Decided:  May 4, 2011)

Docket Nos. 08-4804-cv; 09-1345-cv
(consolidated for disposition)

---------------------------------------

THE CITY OF NEW YORK,

Plaintiff-Appellee,

- v -

MICKALIS PAWN SHOP, LLC,

Defendant-Appellant,

A-1 JEWELRY & PAWN, INC., ADVENTURE OUTDOORS, INC., COLE'S GUN
SHOP, INC., DUNKELBERGER'S SPORTS OUTFITTERS, GALLERY
DISTRIBUTING INC., GREG L. DRIGGERS d/b/a AAA Gun & Pawn Brokers,
THE GUN STORE, INC., HAROLD W. BABCOCK, JR. d/b/a Webb's Sporting
Goods, JAMES THOMAS FARMER d/b/a Jim's Guns and Whatever, NANCY
DAILEY d/b/a Peddler's Post, OLD DOMINION GUNS & TACKLE, INC.,
PATRIOT SERVICES, INC., WELSH PAWN SHOP, INC. d/b/a Big Tom's
Pawn Shop, WOODROW C. HOLMAN III d/b/a Woody's Pawn Shop,
VIRGINIA FIREARMS & TRANSFERS, INC.,

Defendants.

---------------------------------------

THE CITY OF NEW YORK,

Plaintiff-Appellee,

- v -

ADVENTURE OUTDOORS, INC.,

Defendant-Appellant,

A-1 JEWELRY & PAWN, INC., COLE'S GUN SHOP, INC., DUNKELBERGER'S SPORTS OUTFITTERS, GALLERY DISTRIBUTING INC., GREG L. DRIGGERS d/b/a AAA Gun & Pawn Brokers, THE GUN STORE, INC., HAROLD W. BABCOCK, JR. d/b/a Webb's Sporting Goods, JAMES THOMAS FARMER d/b/a Jim's Guns and Whatever, MICKALIS PAWN SHOP, LLC, NANCY DAILEY d/b/a Peddler's Post, OLD DOMINION GUNS & TACKLE, INC., PATRIOT SERVICES, INC., WELSH PAWN SHOP, INC. d/b/a Big Tom's Pawn Shop, WOODROW C. HOLMAN III d/b/a Woody's Pawn Shop, VIRGINIA FIREARMS & TRANSFERS, INC.,

Defendants.[*]

------------------------------------

Before:   SACK and WESLEY, Circuit Judges, and EATON, Judge.[**]

Appeal from a default judgment and permanent injunctions entered by the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge) in favor of the plaintiff-appellee, the City of New York.  The defendants-appellants, Mickalis Pawn Shop, LLC, and Adventure Outdoors, Inc., are retail firearms dealers located in South Carolina and Georgia, respectively.  The City of New York brought suit against them and other firearms dealers for public nuisance on the theory that they intentionally or negligently sell firearms in a manner susceptible to illegal trafficking to New York City.  After engaging in litigation with the City for several years, each defendant-appellant defaulted.  Upon entry of default judgment, the district court issued permanent injunctions prohibiting the defendants-appellants from further violations of the law and

---

[*] The Clerk of Court is directed to amend the official captions in these actions as set forth above.

[**] The Honorable Richard K. Eaton, Judge of the United States Court of International Trade, sitting by designation.

requiring them to undergo supervision by a court-appointed special master. They appealed, asserting that a default judgment should not have been entered; that the default judgment is, in any event, void for lack of personal jurisdiction over each defendant; and, in the alternative, that the injunctions violate Federal Rule of Civil Procedure 65(d) or are unconstitutional. We conclude that the defendants-appellants' withdrawal from the district court proceedings justified the entry of default, followed by default judgment; that the defendants forfeited their defense of lack of personal jurisdiction; and that the default judgment is not void. We agree with the defendants-appellants, however, that the injunctions issued by the district court violate Rule 65(d). We therefore vacate the injunctions and remand for further proceedings.

Affirmed in part, vacated and remanded in part. Judge Wesley concurs in a separate opinion.

FREDERICK A. BRODIE (Kenneth W. Taber, of counsel), Pillsbury Winthrop Shaw Pittman, LLP, New York, N.Y.; ERIC PROSHANSKY, Assistant Corporation Counsel (Richard J. Costa, Ari Biernoff, of counsel), for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, N.Y., for Plaintiff-Appellee City of New York.

JUSTIN S. KAHN, Kahn Law Firm, Charleston, S.C., for Defendant-Appellant Mickalis Pawn Shop, LLC.

JOHN F. RENZULLI (Scott C. Allan, of counsel), Renzulli Law Firm, LLP, White Plains, N.Y., for Defendant-Appellant Adventure Outdoors, Inc.

3

SACK, Circuit Judge:

These appeals present what appear to be two issues of first impression in this Circuit. First, whether a defendant who repeatedly moves to dismiss for lack of personal jurisdiction, but then withdraws from the litigation after those motions are denied, is permitted to attack an ensuing default judgment on the grounds that it is void for lack of personal jurisdiction. Second, whether a federal district court may exercise personal jurisdiction over an out-of-state firearms dealer under the New York long-arm statute, N.Y. C.P.L.R. § 302, based solely on the fact that the dealer's unlawful sales practices have facilitated the trafficking of guns by third parties to New York State, where those guns contribute to a public nuisance. Because we resolve the first question in the negative, we do not reach the second.

The City of New York (the "City") instituted this lawsuit in May 2006 against fifteen federally licensed retail firearms dealers operating from stores in Georgia, Ohio, Pennsylvania, South Carolina, and Virginia. The defendants-appellants, Mickalis Pawn Shop, LLC ("Mickalis Pawn") and Adventure Outdoors, Inc. ("Adventure Outdoors") are among those dealers.[1] Mickalis Pawn and Adventure Outdoors each operates a single retail store in South Carolina and Georgia, respectively. Each separately moved to dismiss the City's complaint against it

---

[1] Although there were many defendants in the district court that are not parties to this appeal, for ease of reference we refer to these two defendants-appellants simply as the "defendants."

4

on the theory that the district court lacked personal jurisdiction over it.  The district court (Jack B. Weinstein, Judge), denying those motions, concluded that the City had made at least a prima facie showing of personal jurisdiction, but left the final determination of personal jurisdiction for trial.

After additional rounds of motion practice and varying amounts of discovery, the two defendants each moved to withdraw their respective counsel and announced to the district court that they would proceed no further in the litigation.  The district court entered a default against each of them.  Eventually, after proceedings before a magistrate judge, the court entered a default judgment and ordered permanent injunctive relief against both defendants.

Both defendants now appeal from the default judgment on various grounds.[2]  First, they assert that their withdrawal from the litigation did not justify the district court's entry of default or the issuance of a default judgment against them.  Second, they contend that the district court lacked personal jurisdiction over them, and therefore that the default judgment is void.  Finally, the defendants challenge the permanent injunctions as unconstitutional or as in violation of Federal Rule of Civil Procedure 65(d).

---

[2] The two defendants' appeals were consolidated for argument on March 11, 2010, before the same panel of this Court.

We conclude that the district court did not abuse its discretion in entering a default and issuing a default judgment against each of the defendants. We also conclude that the defendants forfeited the defense of lack of personal jurisdiction and any other defenses they may have had by willfully abandoning their defense of the litigation. The default judgment against them is therefore not void. However, because we agree with the defendants that the injunctions issued by the district court violate the requirements of Rule 65(d), we vacate the injunctions and remand to the district court for it to craft appropriate injunctive relief.

**BACKGROUND**

The facts underlying this litigation are discussed in detail in two lengthy opinions by the district court. See City of New York v. A-1 Jewelry & Pawn, Inc. ("A-1 Jewelry I"), 501 F. Supp. 2d 369 (E.D.N.Y. 2007); City of New York v. A-1 Jewelry & Pawn, Inc. ("A-1 Jewelry II"), 247 F.R.D. 296 (E.D.N.Y. 2007). We repeat them here only insofar as we think it necessary for an understanding of our resolution of these appeals.

The Defendants-Appellants

Mickalis Pawn is a limited liability company formed under South Carolina law. It operates a single retail store -- a pawn shop in Summerville, South Carolina -- where it sells, among other things, firearms. At all relevant times, Mickalis Pawn's

6

revenue has been derived entirely from sales made at its Summerville store to customers who visit the store in person. As of 2006, Mickalis Pawn did not offer anything for sale in New York, nor had it ever done so. It has never sold any merchandise by mail order, by telephone, or by means of the Internet.

Adventure Outdoors is a Georgia corporation with its principal place of business in Georgia. It operates a single retail store, located in Smyrna, Georgia, from which it sells sporting goods, hunting and fishing equipment, camping supplies, and firearms and ammunition. Like Mickalis Pawn, its revenue is derived from sales made at its retail store to customers who visit the store in person. It does not ship its goods out of state, nor does it sell firearms at gun shows.

Adventure Outdoors has, however, maintained three websites through which customers may initiate the process of purchasing firearms from its store. These websites allow a customer from Georgia or elsewhere in the United States to place a deposit on a firearm through a wholesale distributor and direct the distributor to ship the firearm to Adventure Outdoors. The customer must then visit Adventure Outdoors' store in person to complete the sale and retrieve the firearm. Adventure Outdoors concedes that this system would permit a New York resident to purchase a gun from Adventure Outdoors, but only if he or she traveled to Georgia to pick it up. Adventure Outdoors has sold

guns to residents of other states this way, but never to a New York State resident.

Proceedings in the District Court

On May 15, 2006, the City brought suit against fifteen federally licensed retail firearms dealers located in states other than New York, including Mickalis Pawn and Adventure Outdoors, alleging that they engaged in unlawful sales practices that contribute to a public nuisance in the City.[3]  The City

_____

[3]  Mayor Michael Bloomberg announced the filing of this lawsuit at a press conference held on May 15, 2006.  In response to certain allegedly defamatory comments made by the mayor at that press conference, Mickalis Pawn and Adventure Outdoors each brought suit for defamation against the mayor, the City of New York, and others, in South Carolina and Georgia state courts, respectively.  Following the City's unsuccessful attempt to remove each lawsuit to federal court, see Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290 (11th Cir. 2008) (reversing with instructions to remand to state court); Mickalis Pawn Shop, LLC v. Bloomberg, 482 F. Supp. 2d 707 (D.S.C. 2007) (remanding case to state court), both cases proceeded in state venues.  Adventure Outdoors' lawsuit was ultimately dismissed for failure to comply with certain procedural requirements of Georgia law, see Adventure Outdoors, Inc. v. Bloomberg, 705 S.E.2d 241 (Ga. Ct. App. 2010) (affirming dismissal of lawsuit), while Mickalis Pawn's lawsuit survived a motion to dismiss and, after being voluntarily dismissed and then reinstated, appears to remain pending, see Mickalis Pawn Shop, LLC v. Bloomberg, No. 06-CP-08-1734 (S.C. Ct. C.P. Berkeley County, reinstated Mar. 27, 2009).  Neither litigation is at issue in these appeals.

The City of New York also brought a separate but related action in December 2006 against twelve other federally licensed retail firearms dealers on similar grounds.  See City of New York v. Bob Moates' Sport Shop, Inc., No. 06-CV-6504 (E.D.N.Y.) (complaint filed Dec. 7, 2006).  That litigation, which was also before Judge Weinstein, ended in 2008 after all twelve defendants settled or were dismissed.  See City of New York v. Bob Moates' Sport Shop, Inc., 253 F.R.D. 237 (E.D.N.Y. 2008) (approving settlement).  Like the Georgia and South Carolina state-court

8

alleged in its complaint that each of the fifteen firearms dealers engages in "'strawman' purchases" that facilitate the acquisition of firearms by individuals who are prohibited by law from buying or possessing them.[4]  Compl. ¶ 21 (May 15, 2006). Many of these illegally purchased firearms, the City alleged, are used to commit crimes in the City within a short time after their sale by the defendants.  The City's initial complaint asserted five causes of action -- public nuisance, statutory nuisance, negligence, negligence per se, and negligent entrustment -- and sought damages, nuisance-abatement costs, and permanent injunctive relief.

On August 8, 2006, Mickalis Pawn, Adventure Outdoors, and four other defendant firearms dealers each timely moved to dismiss the complaint as to it for lack of personal jurisdiction. The moving defendants asserted that the requirements of the New York long-arm statute, C.P.L.R. § 302, were not satisfied; that

---

suits, the Bob Moates' lawsuit is not at issue in these appeals.

[4] In a "straw" purchase, one individual buys a firearm with the purpose of transferring it to another individual who is prohibited from purchasing it himself.  See City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 391 (2d Cir. 2008), cert. denied, 129 S. Ct. 1579 (2009).  The stand-in, rather than the true buyer, completes the official form registering the sale, ATF Form 4473, and submits to the federally mandated background check.  See United States v. Robinson, 586 F.3d 540, 541 n.1 (7th Cir. 2009).  A seller who knowingly participates in a straw purchase is subject to federal criminal prosecution.  See, e.g., Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1300 (11th Cir. 2008) (collecting cases).

the defendants lacked the constitutionally requisite minimum contacts with New York; and that the defendants never purposely availed themselves of interstate commerce such that they should reasonably anticipate defending a lawsuit in New York.  The defendants  argued that requiring out-of-state retailers such as themselves to litigate this action in a state with which they have no connection would violate both New York law and tenets of due process under the Fifth and Fourteenth Amendments.

On August 15, 2007, following jurisdictional discovery, the district court denied the motions to dismiss in what it characterized as a "case of first impression" applying the New York long-arm statute to public-nuisance suits against out-of-state firearms dealers.  A-1 Jewelry I, 501 F. Supp. 2d at 374. The court stated that the City's burden at the pleading stage was not to prove personal jurisdiction conclusively, but to show a "substantial likelihood that all the elements of jurisdiction" could be established at trial.  Id. at 416.  After reviewing evidence of the defendants' sales of firearms and the recovery of some of those firearms in New York, the court determined that the City had "demonstrated, with a high degree of probability, that [the] defendants' knowing parallel conduct in their individual states, relying on interstate commerce, ha[s] been responsible for the funneling into New York of large quantities of handguns used by local criminals to terrorize significant portions of the

10

City's population." Id. at 374. The district court concluded that these allegations were "sufficient to provide the minimum contacts necessary for an exercise of personal jurisdiction by the State of New York," id. at 428, and to satisfy the requirements of that provision of New York's long-arm statute permitting jurisdiction over a person who "commits a tortious act without the state causing injury to person or property within the state, . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(ii). See A-1 Jewelry I, 501 F. Supp. 2d at 424-29. The defendants sought leave to take an interlocutory appeal; the district court denied that request.

On August 29, 2007, the City filed an amended complaint. The City substituted, for the five claims in its original complaint, two claims under N.Y. Penal Law §§ 240.45 and 400.05 -- one each for public and statutory nuisance, respectively -- and sought injunctive relief only.

Adventure Outdoors and Mickalis Pawn, among others, again moved to dismiss based on, inter alia, lack of personal jurisdiction.[5] On December 18, 2007, the district court denied

_____

[5] Adventure Outdoors and Mickalis Pawn also sought dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, they requested a stay of litigation pending appeal in City of New York v. Beretta U.S.A. Corp., 401 F. Supp. 2d 244 (E.D.N.Y. 2005), rev'd in part, 524

the defendants' renewed motion in its entirety.  See A-1 Jewelry II, 247 F.R.D. at 305.  The district court ordered an expedited discovery schedule and set a trial date of May 27, 2008.

### Mickalis Pawn's Default

On February 13, 2008, Larry Mickalis, the principal of Mickalis Pawn, was indicted by a federal grand jury in South Carolina for knowingly selling a firearm and ammunition to a convicted felon in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(2).[6]  On February 27, Mickalis Pawn again moved to stay all litigation with the City pending resolution of the criminal case against Mr. Mickalis; the court denied that motion in early March.  See City of New York v. A-1 Jewelry & Pawn, Inc., No. 06-CV-2233, 2008 WL 630483, 2008 U.S. Dist. LEXIS 16708 (E.D.N.Y. Mar. 4, 2008).

About one week later, on March 12, 2008, each of the three law firms representing Mickalis Pawn simultaneously moved to withdraw as counsel, citing the indictment of Mr. Mickalis and his decision to concentrate his financial resources on defending himself in the criminal action.  Counsel asserted in their

---

F.3d 384 (2d Cir. 2008), cert. denied, 129 S. Ct. 1579 (2009). The district court denied the stay application.  A-1 Jewelry II, 247 F.R.D. at 355.

[6] By agreement with the government, Mr. Mickalis ultimately pleaded guilty to a less serious offense: failure to properly maintain records in violation of 18 U.S.C. §§ 922(m) and 924(a)(3)(B).

12

withdrawal motions that Mickalis Pawn would continue to assert its defense of lack of personal jurisdiction and did not intend to waive that defense.  The City opposed the motions, arguing that such withdrawal of counsel would frustrate discovery and substantially delay the proceedings.

On March 18, the district court (Cheryl L. Pollak, Magistrate Judge) held a status conference to discuss, among other things, the motions of counsel to withdraw.  At the conference, counsel for Mickalis Pawn confirmed that their client consented to their withdrawal.  Counsel also announced, however, that "Mickalis Pawn has decided that it does not intend to further defend this case."  Transcript of Proceedings at 14 (Mar. 18, 2008).  Counsel advised the court that Mr. Mickalis, acting on behalf of Mickalis Pawn, "understands that [default] is an obvious consequence of his decision to no longer defend" the lawsuit.  Id.  When the City argued that Mickalis Pawn's failure to defend would lead to entry of default judgment and the imposition of injunctive relief, one of Mickalis Pawn's attorneys stated that his client "does understand the consequences."  Id. at 15.

At the suggestion of counsel, Mr. Mickalis then joined the conference before the magistrate judge by telephone.  Mr. Mickalis confirmed to the court that Mickalis Pawn had no intention of retaining substitute counsel or of further

13

participating in the litigation.  Magistrate Judge Pollak warned Mr. Mickalis:  "[I]f you do not have an attorney to represent Mickalis Pawn, then the City is going to move for a default and because corporations cannot appear in court without counsel, a default will enter. . . .  [T]hat means that the injunctive relief that the City has requested will in all likelihood be granted."  Id. at 17.  Mr. Mickalis indicated that he understood this, but nonetheless reaffirmed his desire to withdraw from the case.  When Magistrate Judge Pollak suggested that she might not permit all three of Mickalis Pawn's law firms to withdraw, one of Mickalis Pawn's attorneys protested that "[t]here's not a whole lot to defend if [Mr. Mickalis is] prepared to go into default."  Id. at 18.

Although counsel for Mickalis Pawn conceded that default was the "likely" result of its decision to withdraw, id. at 22, Mickalis Pawn did not expressly consent to entry of a default.  But in a March 18 letter to the court, counsel for Mickalis Pawn confirmed that they had advised their client "that if the motions to withdraw as counsel . . . are granted[,] th[e] defendant will be without counsel" and "the Court will enter default judgment against it."  Letter to Magistrate Judge Pollak from Renzulli Law Firm, LLP (Mar. 18, 2008).

As a result of what the City perceived to be Mickalis Pawn's acquiescence to a default, the City agreed to abandon the

14

taking of a deposition of Larry Mickalis scheduled to be held shortly thereafter, as well as other pending discovery. The City advised Magistrate Judge Pollak that it would seek a default judgment if Mickalis Pawn's counsel's motions to withdraw were granted, and the City detailed the precise injunctive relief that it would request.

On March 27, 2008, the magistrate judge granted the pending motions for withdrawal of counsel. The City then formally requested that a default be entered against Mickalis Pawn pursuant to Federal Rule of Civil Procedure 55(a). The Clerk of Court entered the default on April 2, 2008.

Two months later, in June 2008, the City moved for a default judgment against Mickalis Pawn pursuant to Federal Rule of Civil Procedure 55(b)(2). Mickalis Pawn, putatively representing itself pro se, opposed the motion by submitting a list of objections. After reviewing both parties' submissions, the magistrate judge issued a report and recommendation suggesting that the City's motion be granted and that the City's proposed findings of fact and conclusions of law be adopted in their entirety. On September 19, 2008, the district court (Jack B. Weinstein, Judge) adopted the magistrate judge's recommendation and issued the City's proposed findings of fact and conclusions of law as its own. See City of New York v. A-1

15

Jewelry & Pawn, Inc., No. 06-CV-2233, 2008 WL 4298501, 2008 U.S. Dist. LEXIS 87236 (E.D.N.Y. Sept. 19, 2008).[7]

Default judgment against Mickalis Pawn was entered on March 24, 2009.  The district court also entered a permanent injunction against Mickalis Pawn.  See City of New York v. Mickalis Pawn Shop, LLC ("Mickalis Pawn Inj."), No. 06-CV-2233, 2009 WL 792042, at *1 (E.D.N.Y. Mar. 23, 2009).[8]  The injunction provided for, among other things, the appointment of a special master and the implementation of remedial measures to abate the public nuisance created by Mickalis Pawn's illegal firearms sales.  See id.

Adventure Outdoors' Default

Unlike Mickalis Pawn, Adventure Outdoors continued to participate in the lawsuit through the close of discovery.  On April 29, 2008, all other defendants having either settled or defaulted, Adventure Outdoors moved for summary judgment seeking dismissal based on, inter alia, lack of personal jurisdiction and preemption by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901–7903.

---

[7] The magistrate judge subsequently amended her report and recommendation on January 27, 2009.  See City of New York v. Adventure Outdoors, Inc., 644 F. Supp. 2d 201, 203, 218 (E.D.N.Y. 2009) (adopting magistrate judge's amended report and recommendation as to Mickalis Pawn).

[8] Not available on Lexis.

16

While Adventure Outdoors' summary-judgment motion was pending, the district court issued an order sua sponte directing the parties to make submissions as to whether they were entitled to a trial by jury.  Following oral argument held on May 21, the district court decided that neither party was so entitled.  The court announced that it would sit as the finder of fact with the assistance of an advisory jury, as provided by Federal Rule of Civil Procedure 39(c).  The following day, the district court denied Adventure Outdoors' motion for summary judgment.  See City of New York v. A-1 Jewelry & Pawn, Inc. ("A-1 Jewelry III"), 252 F.R.D. 130, 131 (E.D.N.Y. 2008).  The court directed that the trial begin on May 27, 2008, with the selection of the advisory jury.

On June 2, in the midst of jury selection, counsel for Adventure Outdoors moved to withdraw from the case.  In a written submission, counsel reported that Adventure Outdoors had "chosen not to engage in the futile exercise of defending itself at a bench trial."  Motion of Renzulli Law Firm to Withdraw as Counsel ("Renzulli Withdrawal Motion") at 1 (June 2, 2008).  Counsel asserted that if the district court sat as factfinder, the ultimate outcome of the trial would be a "foregone conclusion" and Adventure Outdoors would "not receive a fair trial."  Id. Counsel also adverted to their client's limited financial resources.

17

Counsel advised the court that Adventure Outdoors nonetheless intended "to appeal from any default judgment that may be entered against it." Id. Attached to the motion was a declaration by Jay Wallace, the president of Adventure Outdoors, attesting that he had been "informed . . . of the consequences of not participating in the bench trial" and affirming that Adventure Outdoors consented to counsel's withdrawal. Aff. of Jay Wallace ¶ 3, Ex. 1 to Renzulli Withdrawal Motion.

The district court, upon hearing argument from the parties, denied Adventure Outdoors' motion to withdraw its counsel in light of the fact that trial was already underway. The court warned that if Adventure Outdoors "refuse[d] to go forward with the case," that course of conduct would "constitute a default" under Federal Rule of Civil Procedure 55. Transcript of Proceedings at 7 (June 2, 2008). When the district court asked whether the defendant "refuse[d] to go forward with [jury] selection and further proceedings" in the matter, counsel responded that Adventure Outdoors indeed so refused. Id. at 10-12. Counsel declined, however, to consent expressly to entry of default or default judgment.

In light of Adventure Outdoors' refusal to proceed, the City consented to dismissal of the advisory jury. The district court then noted Adventure Outdoors' default on the record, conditionally granted the City's motion for default judgment, and

18

directed that all further proceedings in the case be held before the magistrate judge.[9]

Thereafter, the City and Adventure Outdoors each made submissions to the magistrate judge regarding the City's motion for default judgment.  On January 27, 2009, the magistrate judge issued her report and recommendation to the effect that a default judgment be granted and that the City's proposed findings of fact and conclusions of law be adopted.  See City of New York v. Adventure Outdoors, Inc. ("A-1 Jewelry IV"), 644 F. Supp. 2d 201, 203-18 (E.D.N.Y. 2009) (reproducing text of magistrate judge's January 27, 2009 report and recommendation).  Adventure Outdoors submitted detailed objections to the magistrate judge's report and recommendation.

On March 24, 2009, the district court adopted the magistrate judge's report and recommendation in its entirety and entered a default judgment against Adventure Outdoors, simultaneously with the entry of default judgment against Mickalis Pawn.  Id. at 203.  The district court also issued a permanent injunction against Adventure Outdoors with terms substantially identical to those of the injunction entered against Mickalis Pawn.  See City of New York v. Adventure

_____

[9] During the conference, the City raised the question whether Adventure Outdoors would be permitted to appeal from the entry of default judgment.  The district court properly declined to consider the issue, explaining that the question was not for it to decide.

19

Outdoors, Inc. ("Adventure Outdoors Inj."), No. 06-CV-2233, 2009 WL 792023 (E.D.N.Y. Mar. 23, 2009).[10]

The defendants appeal.

**DISCUSSION**

I.  Subject-Matter Jurisdiction

Following oral argument, we solicited supplemental briefing from the parties to address the effect of the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901 et seq., on these appeals.

The PLCAA, enacted by Congress in 2005, provides in pertinent part that "[a] qualified civil liability action may not be brought in any Federal or State court."  15 U.S.C. § 7902(a). A "qualified civil liability action" is defined as "a civil action or proceeding . . . brought by any person against a manufacturer or seller of a qualified product[11] . . . [arising] from the criminal or unlawful misuse of a qualified product by the person or a third party."  Id. § 7903(5)(A) (footnote added). The definition is, however, subject to several statutory exclusions.  A lawsuit is not barred by the PLCAA, for example, if it is "an action in which a manufacturer or seller of a

---

[10]  Not available on Lexis.

[11] The PLCAA defines the term "qualified product" as "a firearm . . . , including any antique firearm . . . , or ammunition . . . , or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce."  15 U.S.C. § 7903(4).

qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought."  Id. § 7903(5)(A)(iii).

We previously had occasion to consider this provision, which has come to be known as the "predicate exception," in City of New York v. Beretta U.S.A. Corp., 524 F.3d 384 (2d Cir. 2008), cert. denied, 129 S. Ct. 1579 (2009).  There we upheld the constitutionality of the PLCAA against challenges arising under the Commerce Clause, the First and Tenth Amendments, and the principle of separation of powers.  See id. at 393-98.  We also determined, over a dissent, that N.Y. Penal Law § 240.45 was not a "statute applicable to the sale or marketing of firearms" for the purposes of the predicate exception.  Id. at 399-404.  We therefore concluded that dismissal of the plaintiff's public-nuisance suit against various firearms manufacturers arising under section 240.45 was required.  Id. at 404.  We did not expressly consider, however, whether the PLCAA deprived the court of subject-matter jurisdiction over a "qualified civil liability action."

In the instant appeals, we solicited supplemental briefing from the parties on two questions.  First, we asked them to address whether the PLCAA deprives a federal court of subject-matter jurisdiction over a "qualified civil liability action," or

if instead the PLCAA provides a complete defense against such an action. Second, we asked the parties to address whether the predicate exception applies only when the plaintiff pleads, as its cause of action, the violation of "a State or Federal statute applicable to the sale or marketing of the product," or if, instead, supporting factual allegations concerning a statutory violation may satisfy the predicate exception even where the plaintiff's cause of action is not directly premised on the identified statutory violation.

Federal courts have an independent obligation to inquire into the existence of subject-matter jurisdiction. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). "[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." Id. (internal quotation marks omitted). "Our inquiry to ascertain whether we have subject matter jurisdiction ordinarily precedes our analysis of the merits." Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs., 607 F.3d 951, 955 (2d Cir. 2010). We review the question of subject-matter jurisdiction de novo.[12]

---

[12] Although, in the district court proceedings, various defendants asserted that the PLCAA barred suit against them, see A-1 Jewelry II, 247 F.R.D. at 349-53; A-1 Jewelry III, 252 F.R.D. at 132, the district court did not expressly consider the question whether the PLCAA affected its subject-matter jurisdiction. In a related lawsuit, however, Judge Weinstein concluded that the PLCAA did not deprive the court of subject-matter jurisdiction, and further determined that the Supreme Court's ruling in District of Columbia v. Heller, 554 U.S. 570

22

DiTolla v. Doral Dental IPA of N.Y., 469 F.3d 271, 275 (2d Cir. 2006).

Whether a court possesses subject-matter jurisdiction, and whether a plaintiff can state a claim for relief, "are two questions that are easily, and often, confused." Carlson v. Principal Fin. Grp., 320 F.3d 301, 305-06 (2d Cir. 2003). The concept of subject-matter jurisdiction, which relates solely to the court's adjudicatory authority, is analytically distinct from "the essential ingredients of a [plaintiff's] claim for relief." Arbaugh, 546 U.S. at 503.

Because "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system," Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011), and "[b]ecause the consequences that attach to the jurisdictional label may be so drastic," id., the Supreme Court has endeavored in recent years "to bring some discipline to the use of this term," id. To that end, the Supreme Court has developed a bright-line test to determine whether a particular statutory restriction is one that deprives a court of subject-matter jurisdiction.

> If the Legislature clearly states that a
> threshold limitation on a statute's scope
> shall count as jurisdictional, then courts and
> litigants will be duly instructed and will not

---

(2008), did not bear on the question. See Bob Moates', 253 F.R.D. at 241-42.

23

be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

Arbaugh, 546 U.S. at 515-16 (footnote and citation omitted).

Arbaugh represents a "powerful statement[] that courts should be reluctant to make issues jurisdictional . . . unless statutory language requires it." Zhong v. U.S. Dep't of Justice, 489 F.3d 126, 134 (2d Cir. 2007) (Calabresi, J., concurring in denial of rehearing en banc).

To be sure, the Supreme Court has noted since Arbaugh that "Congress . . . need not use magic words in order to speak clearly," Henderson, 131 S. Ct. at 1203, and that "'[c]ontext, including th[e] [Supreme] Court's interpretation of similar provisions in many years past, is relevant,'" id. (quoting Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1248 (2010)). Nonetheless, the Court has reaffirmed Arbaugh's core holding that Congress must provide a "'clear' indication that [it] want[s] [a] rule to be 'jurisdictional,'" id. (quoting Arbaugh, 546 U.S. at 515-16), before we may recognize it as being jurisdictional. Indeed, even rules that are "important and mandatory . . . should not be given the jurisdictional brand" unless Congress has clearly indicated otherwise. Id.; see also Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen., 130 S. Ct. 584, 596 (2009).

24

We conclude that the PLCAA's bar on "qualified civil liability action[s]," 15 U.S.C. § 7902(a), does not deprive courts of subject-matter jurisdiction.  The language of the PLCAA "'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the [district courts].'"  Henderson, 131 S. Ct. at 1204 (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394 (1982)).  Instead, it provides only that "[a] qualified civil liability action may not be brought in any Federal or State court."  15 U.S.C. § 7902(a).  Although the phrase "may not be brought" suggests absence of jurisdiction, the phrase is not equivalent to a clear statement of Congress's intent to limit the power of the courts rather than the rights of litigants.  Henderson, 131 S. Ct. at 1203.  In the absence of such a clear statement, we must treat the PLCAA as speaking only to the rights and obligations of the litigants, not to the power of the court.  Compare, e.g., Reed Elsevier, 130 S. Ct. at 1245 (concluding that Copyright Act registration requirement, 17 U.S.C. § 411(a), did not implicate subject-matter jurisdiction because the statute did not "clearly state" that the requirement was jurisdictional), with Rockwell Int'l Corp. v. United States, 549 U.S. 457, 463, 467-68 (2007) (determining that False Claims Act, former 31 U.S.C. § 3730(e)(4)(A), was jurisdictional insofar as it declared that "[n]o court shall have jurisdiction over an action under this section" unless a specified condition applies),

25

superseded by statute, Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2) (codified as amended at 31 U.S.C. § 3730(e)(4)(A)). We therefore conclude that the PLCAA did not divest the district court of subject-matter jurisdiction over this dispute.[13]

Having determined that we possess subject-matter jurisdiction, we would, in the ordinary course, proceed to consider whether the City's lawsuit is nonetheless barred by the PLCAA. In this case, however, the defendants did not fully litigate their defenses under the PLCAA, but instead withdrew from the litigation, defaulted, and suffered a default judgment to be entered against them. We accordingly inquire not whether the City's lawsuit was barred by the PLCAA, but rather, whether the district court abused its discretion in entering a default judgment against the defendants.

We have considered the parties' other arguments concerning lack of subject-matter jurisdiction and conclude that they are without merit.

---

[13] Subject-matter jurisdiction over this litigation is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332. We note that, although the parties appear to have misapprehended the test for determining the citizenship of a limited-liability company, see Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000), the record before us supports the conclusion that there is complete diversity of citizenship among the parties to these appeals.

## II. Entry of Default Judgment

The procedural posture of these appeals is in some respects unusual. Adventure Outdoors and Mickalis Pawn did not, for example, move before the district court to vacate or set aside the default judgment, as is permitted by Federal Rules of Civil Procedure 55(c) and 60(b).[14] Instead, they appealed directly from the entry of judgment. "[I]t is possible, although unusual, for defendants to skip the motion to vacate the default judgment and instead directly appeal the entry of a default judgment." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001); see also Swarna v. Al-Awadi, 622 F.3d 123, 140 (2d Cir. 2010) ("[A] default judgment, like any other judgment, can be appealed to this Court."). As a technical matter, therefore, we review not whether the district court abused its discretion in declining to vacate the default judgment, but whether it abused its discretion in granting a default judgment in the first instance. See Swarna, 622 F.3d at 133; Pecarsky, 249 F.3d at 171; cf. Paddington Partners v. Bouchard, 34 F.3d 1132, 1147 (2d Cir. 1994) (collecting cases distinguishing

---

[14] Rule 55(c) provides that "[t]he court may . . . set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b), in turn, identifies six grounds for relief from a final judgment, including mistake or excusable neglect; newly discovered evidence; fraud; voidness; satisfaction of judgment; or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)-(6).

27

appellate review of the denial of a Rule 60(b) motion from review of the merits of the underlying judgment itself).

"Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation."  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004).  Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment.  New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff.  The entry of default is governed by Rule 55(a), which provides:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a).  Although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, see Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1152 n.11 (2d Cir. 1995) (describing "the entry of a default" as "largely a formal matter" (internal quotation marks omitted)), a district judge also possesses the inherent power to enter a default, see Beller & Keller v. Tyler, 120 F.3d 21, 22 n.1 (2d Cir. 1997).  The entry of a default, while establishing

liability, "is not an admission of damages."[15]  Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009).

The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c).[16]  Under Rule 55(b), a default judgment ordinarily must be entered by the district judge, rather than by the clerk of court, except in certain circumstances provided for by the rule and not present here.[17]  A district court is empowered under Rule 55(b)(2), in the exercise of its discretion, to "conduct hearings or make referrals" as may be necessary, inter alia, to determine the amount of damages or establish the truth of the

---

[15] A defaulted defendant may move before the district court to be relieved of its default, and the court "may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c). Because the entry of default is an "interlocutory act and, as such, a non-final order," however, "[i]t is therefore not appealable" directly.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).

[16] Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007).

[17] Rule 55(b)(1) permits entry of judgment by the clerk of court, without involvement of a judge, in circumstances where "the plaintiff's claim is for a sum certain and the defendant has failed to appear and is not an infant or incompetent person." Green, 420 F.3d at 104.  Rule 55(b)(2) governs "[i]n all other cases," id. (internal quotation marks omitted), including this one.

plaintiff's allegations.  Fed. R. Civ. P. 55(b)(2)(B)-(C).  "A default judgment is a final action by the district court in the litigation [and] one that may be appealed."  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).

Because we have "a strong preference for resolving disputes on the merits," and because "a default judgment is the most severe sanction which the court may apply," Green, 420 F.3d at 104 (internal quotation marks omitted), we have characterized a district court's discretion in proceeding under Rule 55 as "circumscribed."  Enron Oil Corp., 10 F.3d at 95; see also State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 168 (2d Cir. 2004) ("Default judgments 'are generally disfavored and are reserved for rare occasions.'" (quoting Enron Oil Corp., 10 F.3d at 96)), cert. denied, 543 U.S. 1177 (2005).

A.    Entry of Default Under Rule 55(a)

"In an appeal from a default judgment, the court may review both the interlocutory entry of default and the final [default] judgment."  Enron Oil Corp., 10 F.3d at 95.

The defendants argue that the district court abused its discretion by treating their withdrawal from the litigation as a basis for entering default against them.  They assert that because over the course of several years they appeared in the litigation, repeatedly moved to dismiss, eventually filed an answer, and vigorously defended themselves in discovery, they did not "fail[] to plead or otherwise defend" within the meaning of

30

Rule 55(a). They argue that Rule 55(a) therefore did not apply, and that the City was required to proceed to trial and prove its case, including the existence of personal jurisdiction over the defendants, by a preponderance of the evidence.

We disagree. To be sure, the "typical Rule 55 case [is one] in which a default has entered because a defendant failed to file a timely answer." Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 64 (2d Cir. 1986). Nonetheless, a district court is also empowered to enter a default against a "defendant [that] has failed to . . . 'otherwise defend.'" Id. (quoting Fed. R. Civ. P. 55(a)).

We have embraced a broad understanding of the phrase "otherwise defend." For example, in Brock, we concluded that a default was properly entered when the defendant, having demonstrated a lack of diligence during pre-trial proceedings, sought and received a mid-trial adjournment, but then failed to appear when the trial resumed. Id. at 63-65. We observed that "a trial judge, responsible for the orderly and expeditious conduct of litigation, must have broad latitude to impose the sanction of default for non-attendance occurring after a trial has begun." Id. at 64.

Similarly, in Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61 (2d Cir. 1981), we concluded that a defendant's obstructionist litigation tactics, including "failing to appear for a deposition, dismissing counsel, giving vague and

31

unresponsive answers to interrogatories, and failing to appear for trial[,] were sufficient to support a finding that [the defendant] had 'failed to plead or otherwise defend' under Federal Rule of Civil Procedure 55."  Id. at 65; see also Cotton v. Slone, 4 F.3d 176, 179, 181 (2d Cir. 1993) (affirming entry of default judgment against an individual defendant who, following discovery, withdrew his counsel and refused to comply with a court order requiring submission of a pretrial memorandum).

And in Eagle Associates v. Bank of Montreal, 926 F.2d 1305 (2d Cir. 1991), we decided that because the defendant, a limited partnership, had willfully disregarded the district court's order that the defendant appear through counsel, the court was justified in imposing default.  "Such cavalier disregard for a court order is a failure, under Rule 55(a), to 'otherwise defend as provided by these rules.'"  Id. at 1310 (internal quotation marks omitted); see also Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006) (noting that a default judgment may be entered against a corporation that fails to appear through counsel), cert. denied, 549 U.S. 1114 (2007); Dow Chem. Pac. Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 334-36 (2d Cir. 1986) (same); SEC v. Research Automation Corp., 521 F.2d 585, 589 (2d Cir. 1975) (same); Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (same).

32

We also find persuasive the Third Circuit's analysis in Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912 (3d Cir. 1992). There, the district court entered a default judgment against defendants who had failed to comply with discovery orders and to appear for trial. On appeal, the defendants protested -- as Adventure Outdoors and Mickalis Pawn do here -- that "Rule 55 cannot be used to impose a default against a defendant who has filed an answer and actively litigated during pretrial discovery." Id. at 917.

The Court of Appeals affirmed. It decided that the plain meaning of the phrase "otherwise defend" was broad enough to support entry of default even after a defendant had filed an answer asserting affirmative defenses. Id. Relying upon our decisions in Brock and Au Bon Pain, as well as similar decisions in three other circuits, the Third Circuit concluded that "the district court's power to maintain an orderly docket justifies the entry of a default against a party who fails to appear at trial" or to "meet other required time schedules." Id. at 918.

We similarly conclude that the district court did not abuse its discretion in entering a Rule 55(a) default against either Adventure Outdoors or Mickalis Pawn.

First, each defendant affirmatively signaled to the district court its intention to cease participating in its own defense, even after the defendant was clearly warned that a

33

default would result.  The defendants' refusal to proceed to trial places this case squarely within our rulings in <u>Brock</u> and <u>Au Bon Pain</u>.

Second, in the case of Mickalis Pawn, a Rule 55(a) default was also proper under <u>Eagle Associates</u> and like cases insofar as this defendant withdrew its counsel without retaining a substitute.  <u>See</u> <u>Lattanzio v. COMTA</u>, 481 F.3d 137, 140 (2d Cir. 2007) (per curiam) ("[A] limited liability company . . . may appear in federal court only through a licensed attorney.").

Finally, both defendants clearly indicated that they were aware that their conduct likely would result in a default.

In arguing that the district court nonetheless erred by entering a default, both Adventure Outdoors and Mickalis Pawn rely on a Fifth Circuit case from 1949: <u>Bass v. Hoagland</u>, 172 F.2d 205 (5th Cir.), <u>cert. denied</u>, 338 U.S. 816 (1949).  There, a split panel of the Fifth Circuit decided that a default could not be entered against a defendant who had failed to appear for trial.  The court concluded that "[t]he words 'otherwise defend' refer to attacks on the service, or motions to dismiss, or for better particulars, and the like."  <u>Id.</u> at 210.  In the court's view, these words did not refer to circumstances in which a defendant filed an answer and only later failed to appear in

34

court.  *Id.*  But this interpretation[18] of Rule 55 has not been embraced by this Court.  *See* *Brock*, 786 F.2d at 64; *Au Bon Pain*, 653 F.2d at 65.  Nor has it found favor in a majority of our sister circuits.  *See, e.g.*, *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 692-93 (1st Cir. 1993); *Hoxworth*, 980 F.2d at 918 (3d Cir. 1992)

---

[18] Adventure Outdoors and Mickalis Pawn note that several leading treatises approve of *Bass*'s logic.  For example, Wright & Miller, following *Bass*, counsel that once a defendant has "participated throughout the pretrial process and has filed a responsive pleading," any failure by the defendant to appear thereafter should not result in a concession of liability, but rather, "the court should require plaintiff to present evidence supporting liability . . . and a judgment should be entered in plaintiff's favor only if the evidence supports it."  10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2682, at 18 (3d ed. 1998).  Likewise, Moore's Federal Practice, identifying a circuit split concerning whether a defendant's failure to defend after the pleadings stage can be grounds for a Rule 55(a) default, concludes that "[t]he better view is that Rule 55(a)'s 'otherwise defend' language may not be extended to justify a default once there has been an initial responsive pleading or an initial action that constitutes a defense."  10-55 James Wm. Moore et al., *Moore's Federal Practice* § 55.11[2][b][iii]; *see also* Am. Jur. 2d *Judgments* § 263.  However, these authorities do not reflect the law of this Circuit by which we are bound.

The defendants also rely on a *dictum* from our more recent decision in *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006).  There, we reviewed whether it was appropriate for a district court to enter a default judgment against a party who failed to respond to a petition under the Federal Arbitration Act to confirm an arbitration award.  We decided that it was not.  We observed, in passing, that "Rule 55 is meant to apply to 'civil actions' where only the first step has been taken -- *i.e.*, the filing of a complaint -- and the court thus has only allegations and no evidence before it."  *Id.* at 107.  Although this statement supports the view that Rule 55 should not apply after the pleadings stage, it is a *dictum* and does not -- it cannot -- overrule our existing precedent to the contrary.

(expressly declining to follow Bass); Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 133 (4th Cir.), cert. denied, 506 U.S. 821 (1992); Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 856 (8th Cir. 1996); Ringgold Corp. v. Worrall, 880 F.2d 1138, 1141-42 (9th Cir. 1989) (per curiam). But see Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 400 n.2 (5th Cir. 1981) ("Although Bass has been criticized . . . it nevertheless remains as binding precedent in this circuit." (citation omitted)); Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1134 (11th Cir. 1986) ("If the defendant has answered the complaint but fails to appear at trial, issue has been joined, and the court cannot enter a [Rule 55] default judgment.").

B.    Entry of Default Judgment Under Rule 55(b)(2)

Our review of whether the default judgment was properly granted by the district court is for abuse of discretion. See Swarna, 622 F.3d at 133; Pecarsky, 249 F.3d at 171. We also review for abuse of discretion a district court's decision concerning the extent and scope of evidentiary proceedings, if any, held prior to its entry of such a judgment. Finkel, 577 F.3d at 87; Enron Oil Corp., 10 F.3d at 95; see Fed. R. Civ. P. 55(b)(2) (providing that "[t]he court may conduct hearings or make referrals" prior to entering judgment).

The defendants argue that the district court abused its discretion in entering the default judgment for three principal

36

reasons.  First, Mickalis Pawn argues that the Rule 55 proceedings were beset by procedural irregularities.  Second, both defendants argue that the district court erred by failing to make specific factual findings by a preponderance of the evidence that personal jurisdiction existed.  Third, in response to our request for supplemental briefing, they assert that the plaintiff's claims are barred by the PLCAA.

1.  Procedural Irregularities and Rule 55(b)(2).  "A default judgment may be considered void if the judgment has been entered in a manner inconsistent with due process of law."  State Street Bank & Trust Co., 374 F.3d at 178 (internal quotation marks omitted).  Even after a defendant has defaulted, the defendant is nonetheless "entitled . . . to be heard concerning the nature and details of the judgment to be entered."  Brock, 786 F.2d at 65.  And Rule 55(b)(2) provides that "[i]f the party against whom a default judgment is sought has appeared" at any point in the litigation, that party is entitled to seven days' written notice of the proceeding at which default judgment may be entered.  Fed. R. Civ. P. 55(b)(2).

Mickalis Pawn contends that the Rule 55(b)(2) proceedings were conducted in a manner violative of the Due Process Clause because, it says, the default judgment against it resulted from a "series of ex parte acts."  Opening Br. of Mickalis Pawn at 8.  It observes that, after its three law firms

37

collectively withdrew from the case in March 2008, it no longer was able to receive automatic notification through the electronic case filing system of docket activity in the case. Mickalis Pawn contends that all such filings by the district court or by the City made after March 2008 were "<u>ex parte</u>" to the extent that Mickalis Pawn was not simultaneously sent a copy of those filings by mail, as the district court had previously ordered must be done.

But Mickalis Pawn does not assert that it was deprived of <u>actual</u> notice as to any of these filings. To the contrary, the record reflects that both Mickalis Pawn and Adventure Outdoors not only had notice of, but actively participated in, each stage of the Rule 55 proceedings before the district court. For example, they each filed objections to the City's proposed findings of fact and to the magistrate judge's successive reports recommending that the City's motions for default judgment be granted.[19] In Mickalis Pawn's case, the district court accepted those submissions even though Mickalis Pawn -- a limited liability company which cannot appear except through counsel, <u>see</u> <u>Lattanzio</u>, 481 F.3d at 140 -- purported to file them in a <u>pro se</u>

---

[19] Adventure Outdoors filed its own proposed findings of fact and conclusions of law in opposition to those submitted by the City. The magistrate judge considered Adventure Outdoors' submissions in preparing her report and recommendation. <u>See</u> <u>A-1 Jewelry IV</u>, 644 F. Supp. 2d at 208-09 (describing Adventure Outdoors' proposed findings and conclusions).

capacity. Because the alleged irregularities relied upon by Mickalis Pawn did not deprive it of notice and an opportunity to be heard, we conclude that the district court did not abuse its discretion in entering a default judgment pursuant to Rule 55(b)(2), notwithstanding Mickalis Pawn's complaints concerning inconsistencies in the methods of service employed.[20]

        2. _Personal Jurisdiction and Rule 55(b)(2)._ The defendants argue that the district court erred by failing to make findings, based on a preponderance of the evidence, that the court had personal jurisdiction over each defendant. Both defendants contend that such findings are a procedural prerequisite to entering default judgment under Rule 55(b)(2). And Mickalis Pawn argues that it was "a _per se_ abuse of discretion" not to have done so. Reply Br. of Mickalis Pawn at 24-25. The defendants also assert that they did not intend to abandon their objections to the district court's exercise of personal jurisdiction upon their default. They point out that they continued to press their jurisdictional defense in their

---

[20] We also reject Mickalis Pawn's contention that the proceedings were procedurally improper because the City, after having indicated to Mickalis Pawn that it would seek a default judgment under Rule 55(b)(2), instead first sought entry of default under Rule 55(a). Because Rule 55 contemplates a "two-step process" beginning with entry of default under Rule 55(a), _Green_, 420 F.3d at 104, the City acted properly in first seeking entry of default before moving for default judgment.

submissions to the district court and magistrate judge throughout the Rule 55 proceedings.

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp., 619 F.3d 207, 213 (2d Cir. 2010). We have, however, left open the question "whether a district court must investigate its personal jurisdiction over defendant before entering a default judgment." Id. at 213 n.7 (emphasis in original). But see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999) (vacating default judgment and instructing district court to determine whether the plaintiffs could "prove the jurisdictional facts by a preponderance of the evidence"). Several of our sister circuits appear to impose such a requirement. See, e.g., Mwani v. bin Laden, 417 F.3d 1, 6-7 (D.C. Cir. 2005); Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy, 242 F.3d 322, 324 (5th Cir. 2001); In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999); Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir. 1997).

Personal jurisdiction, unlike subject-matter jurisdiction, can, however, be purposely waived or inadvertently forfeited. "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Ins. Corp. of Ireland v. Compagnie des

40

Bauxites de Guinee, 456 U.S. 694, 703 (1982); see also id. at 706 (cautioning that there is nothing "unique about the requirement of personal jurisdiction, which prevents it from being established or waived like other rights"); Sinoying Logistics, 619 F.3d at 213; "R" Best Produce, Inc. v. DiSapio, 540 F.3d 115, 123 (2d Cir. 2008); Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d Cir. 1998), cert. denied, 526 U.S. 1146 (1999).  Therefore, "a district court should not raise personal jurisdiction sua sponte when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." Sinoying Logistics, 619 F.3d at 213 (emphasis in original).

"[I]n determining whether waiver or forfeiture of objections to personal jurisdiction has occurred, 'we consider all of the relevant circumstances.'"  Mattel, Inc. v. Barbie-Club.com, 310 F.3d 293, 307 (2d Cir. 2002) (quoting Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999), cert. denied, 530 U.S. 1244 (2000)).  It is well established that a party forfeits its defense of lack of personal jurisdiction by failing timely to raise the defense in its initial responsive pleading. See Fed. R. Civ. P. 12(h).  But there are "various [additional] reasons a defendant may be estopped from raising the issue." Ins. Corp. of Ireland, 456 U.S. at 704.  A court will obtain, through implied consent, personal jurisdiction over a defendant if "[t]he actions of the defendant [during the litigation] . . .

41

amount to a legal submission to the jurisdiction of the court, whether voluntary or not."  Id. at 704-05; see also Peterson v. Highland Music, Inc., 140 F.3d 1313, 1318 (9th Cir.) ("Most defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation."), cert. denied, 525 U.S. 983 (1998). For example, we have held that a defendant that asserted a jurisdictional defense in its answer, but failed actively to litigate that defense until four years later, forfeited the defense by forgoing the opportunity to raise it sooner. Hamilton, 197 F.3d at 60-62; accord Cont'l Bank, N.A. v. Meyer, 10 F.3d 1293, 1297 (7th Cir. 1993); Yeldell v. Tutt, 913 F.2d 533, 538-39 (8th Cir. 1990).

In addition, other circuits have held that a defendant who unsuccessfully raises a jurisdictional objection at the outset, but later creates the impression that he has abandoned it, may not seek to renew his jurisdictional argument on appeal following an adverse determination on the merits.  See Rice v. Nova Biomed. Corp., 38 F.3d 909, 914-15 (7th Cir. 1994), cert. denied, 514 U.S. 1111 (1995); see also Peterson, 140 F.3d at 1318 (9th Cir.) (describing this strategy as "sandbagging").

We find the analysis of the Seventh Circuit in e360 Insight v. Spamhaus Project, 500 F.3d 594 (7th Cir. 2007), helpful.  There, the defendant removed the lawsuit from state

42

court and then filed an answer asserting, among other defenses, lack of personal jurisdiction. One month later, at a pre-trial status conference, it moved to withdraw its answer and to withdraw its counsel from the litigation. It also announced, through counsel, that it "want[ed] to participate in the defense no further" and would "do absolutely nothing" in the litigation. Id. at 596. The district court responded that the defendant would "have to defend the case," otherwise it would lose by default. Id. The defendant's counsel represented that his client had "been fully informed of the fact that . . . default judgment is a real possibility," and that it was "aware of that and [was] prepared to take that risk." Id. The court, acting on the understanding that counsel had informed the defendant that "it was a dead-bang certainty that default [was] going to be entered," granted the defendant's motions to withdraw its answer and withdraw counsel. Id. at 597. The court then entered a default, and upon the plaintiff's motion, granted a default judgment three weeks later. Id.

The defendant timely moved to vacate the judgment pursuant to Rule 60(b). The motion was denied. The defendant then appealed, arguing that the district court had acted improperly by not inquiring into the existence of personal jurisdiction prior to entering judgment. Id. at 598.

43

The Seventh Circuit rejected the defendant's argument and affirmed the entry of a default judgment. It "s[aw] no reason to require the district court to raise sua sponte affirmative defenses, which may, of course, be waived or forfeited, on behalf of an appearing party who elects not to pursue those defenses for itself." Id. at 599. The court continued:

> We perceive no error in the district court's conclusion that [the defendant] Spamhaus intentionally elected to abandon its available defenses when it withdrew those defenses from consideration by the court and indicated that it was prepared to accept a default. Spamhaus' then-counsel confirmed that it wished to "participate in the defense no further" and "do absolutely nothing." It was not erroneous to treat this kind of voluntary abandonment of defenses, raised but not pursued, as a waiver. Based on its conduct before the court, we have no doubt that Spamhaus understood the defenses available to it, consistently asserted those defenses in the early stages of those proceedings and then affirmatively elected to abandon those defenses before the district court. We see no reason to allow Spamhaus to escape the consequences of that decision in the later stages of this proceeding.

Id. at 600 (citations omitted). The court concluded that "[b]ecause the jurisdictional challenges Spamhaus now seeks to raise have been waived and neither the district court nor this court has the duty to resurrect them, the district court did not abuse its discretion in entering judgment of liability nor in denying the motion for Rule 60(b) relief." Id. at 602.

44

Similarly, in this case, Adventure Outdoors and Mickalis Pawn initially litigated their jurisdictional defense, but later changed course, announcing to the district court that they would cease defending even though a default would likely result.  Spamhaus Project is persuasive authority for the proposition that a defendant forfeits its jurisdictional defense if it appears before a district court to press that defense but then willfully withdraws from the litigation and defaults, even after being warned of the consequences of doing so.  We, like the Seventh Circuit, "see no reason to require the district court to raise sua sponte" the defense of lack of personal jurisdiction on behalf of parties who have "elect[ed] not to pursue those defenses for [themselves]."[21]  Id. at 599.

---

[21] The defendants attempt to distinguish Spamhaus Project on two bases.  First, Adventure Outdoors argues that default judgments are not disfavored in the Seventh Circuit, as they are here, citing Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc., 28 F.3d 42, 47 (7th Cir. 1994).  But nothing in Spamhaus Project suggests that its reasoning concerning forfeiture depended on whether default judgments were or were not disfavored.  And there is some question as to whether that attitude, if it existed in 1994, prevails today.  See Sun v. Bd. of Trustees of Univ. of Ill., 473 F.3d 799, 811 (7th Cir.), cert. denied, 127 S. Ct. 2941 (2007).

Second, the defendants point out that in Spamhaus Project, the defendant withdrew its answer before defaulting, whereas in the instant case, neither defendant withdrew its answer or had it stricken by the district court.  Again, nothing in Spamhaus Project suggests that the ministerial step of withdrawing the answer was relevant to the court's finding of forfeiture.  Neither does anything in our own precedent suggest that a district court must "strike" a defendant's answer before declaring that defendant to be in default.  Cf., e.g., Cotton, 4 F.3d at 178-79; Brock, 786 F.2d at 64; Au Bon Pain, 653 F.2d at

45

Arguing otherwise, the defendants rely on D.H. Blair & Co. v. Gottdiener, 462 F.3d 95 (2d Cir. 2006). There, the district court entered a Rule 55 default judgment against a group of defendants who, after removing to federal court the plaintiff's petition to confirm in part and vacate in part an arbitral award, failed to answer the petition. We vacated the judgment and remanded, instructing the district court to decide whether the plaintiff was entitled to the relief it sought notwithstanding the defendants' failure to answer the petition. We decided that "[w]hen a court has before it [an extensive evidentiary] record, rather than only the allegations of one party found in complaints, the judgment the court enters should be based on the record." Id. at 109.

The defendants argue by analogy that the district court should not have granted the City's motion for default judgment here without first determining that sufficient evidence existed in the record to sustain a finding of personal jurisdiction by a preponderance of the evidence. The analogy does not hold. D.H. Blair concerned a unique, quasi-appellate proceeding: a petition to confirm or vacate an arbitration award pursuant to the Federal Arbitration Act. See 9 U.S.C. § 9 (permitting parties to an

---

65 (all upholding default judgments entered against an appearing defendant, without noting if the defendant's answer had been stricken prior to entry of default).

46

arbitration to "apply to the court . . . for an order confirming the award"); id. § 10(a) (permitting parties to petition for vacatur of an arbitral award).  In considering a petition to confirm or vacate an arbitral award, a district court typically has at its disposal the full evidentiary record from the underlying arbitration.  We concluded in D.H. Blair that "default judgments in confirmation/vacatur proceedings are generally inappropriate," D.H. Blair, 462 F.3d at 109, and therefore held that district courts should instead treat a petitioner's application to confirm or vacate an arbitral award as "akin to a motion for summary judgment," id.  This case, unlike D.H. Blair, does not concern proceedings under the Federal Arbitration Act, nor does it concern a scenario in which a court is presented with a complete evidentiary record from a prior proceeding.

Adventure Outdoors also asserts that our decision in Brock demonstrates that a plaintiff seeking a default judgment must prove its case -- including the existence of personal jurisdiction -- by a preponderance of the evidence, even after a defendant has defaulted.  In Brock, the defendants failed to re-appear at trial following a two-week adjournment.  The district court entered a default against the defendants, but then opted to complete the trial record by taking testimony from the plaintiff's witnesses.  The court eventually entered a default judgment accompanied by findings of fact and conclusions of law.  On appeal, we vacated and remanded for further proceedings.  See

47

<u>Brock</u>, 786 F.2d at 63. Adventure Outdoors contends that <u>Brock</u> should be read as requiring that a trial be held prior to entry of default judgment.

Although <u>Brock</u> did result in the vacatur of a default judgment on appeal, it does not support Adventure Outdoors' argument. There, we remanded not for the district court to adjudicate the merits of the defendants' defenses, but to permit the defendants to be heard concerning the "nature and details of the judgment to be entered in light of th[e] trial record" and the scope of the relief requested by the plaintiff. <u>Id.</u> at 65. Although it is true that the district court in <u>Brock</u> had opted to continue the trial proceedings following the defendants' default, nothing in our decision on appeal ratified the district court's decision in that respect.[22] <u>See id.</u>

---

[22] Although the parties do not advert to it, we have also reviewed our decision in <u>Credit Lyonnais Securities (USA), Inc. v. Alcantara</u>, 183 F.3d 151 (2d Cir. 1999). In that case, the defendant failed to answer the complaint but later contested the entry of default judgment against it, and we held that the district court was bound to inquire into personal jurisdiction before entering judgment.

The defendants' appearance and withdrawal from the proceedings in this case, by contrast, forfeited their defense. Through that forfeiture, the defendants implicitly, if unwittingly, established the jurisdiction of the district court. Accordingly, the district court did not err by failing to make a final finding of jurisdiction by a preponderance of the evidence. <u>See, e.g.</u>, <u>Sinoying</u>, 619 F.3d at 213 ("[A] district court should <u>not</u> raise personal jurisdiction <u>sua sponte</u> when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court."). We therefore do not find <u>Credit Lyonnais</u> helpful to the defendants here.

48

**3. The PLCAA.** The defendants appear to argue, belatedly in their supplemental briefing, that the district court should not have entered a default judgment because the City's claims were barred by the PLCAA.

It is an "ancient common law axiom" that a defendant who defaults thereby admits all "well-pleaded" factual allegations contained in the complaint. Vt. Teddy Bear Co., 373 F.3d at 246. However, it is also true that a district court "need not agree that the alleged facts constitute a valid cause of action." Au Bon Pain, 653 F.2d at 65. Indeed, we have recently suggested that, prior to entering default judgment, a district court is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law."[23] Finkel, 577 F.3d at 84.

---

[23] Most of our sister circuits appear to have held expressly that a district court may not enter a default judgment unless the plaintiff's complaint states a valid facial claim for relief. See, e.g., Conetta v. Nat'l Hair Care Ctrs., Inc., 236 F.3d 67, 75-76 (1st Cir. 2001); Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975); Gen. Conf. Corp. of Seventh-Day Adventists v. McGill, 617 F.3d 402, 407 (6th Cir.), cert. denied, __ S. Ct. __, 2011 WL 1457562 (U.S. Apr. 18, 2011); Black v. Lane, 22 F.3d 1395, 1399 (7th Cir. 1994); Marshall v. Baggett, 616 F.3d 849, 852 (8th Cir. 2010); DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007), cert. denied, 129 S. Ct. 40 (2008); Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010); Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005). According to these circuits, "[e]ntry of default judgment does not preclude a party from challenging the sufficiency of the complaint on appeal." Marshall, 616 F.3d at 852; see id. (collecting cases).

We recognize that there is some uncertainty whether the City's claims were legally sufficient, in light of their possible preemption by the PLCAA. But we need not decide whether the district court abused its discretion in entering a default judgment, because the defendants have forfeited this defense on appeal. Mickalis Pawn did not address the PLCAA in its opening brief, and Adventure Outdoors raised it only by way of footnote. See Opening Br. of Adventure Outdoors at 32 n.12. We ordinarily deem an argument to be forfeited where it has not been "sufficiently argued in the briefs," Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir.), cert. denied, 525 U.S. 1001 (1998), such as when it is only addressed in a footnote:

> We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review. The enormous volume of briefs and arguments pressed on each panel of this court at every sitting precludes our scouring through footnotes in search of some possibly meritorious point that counsel did not consider of sufficient importance to include as part of the argument.

United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir.), cert. denied, 510 U.S. 843 (1993).

To be sure, the doctrine of forfeiture is prudential and may be disregarded in our discretion. See In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 133 (2d Cir. 2008). We ourselves asked the parties for supplemental submissions concerning the applicability of the PLCAA. But we do not think

that our doing so constituted a decision by the Court on any issue in the case.  We must be free to seek additional briefing on this issue without thereby conceding that forfeiture is inappropriate.  Having reviewed the submissions, we conclude that the unusual action by the Court of ignoring the forfeiture is unwarranted here.

We have considered the remainder of defendants' arguments concerning the City's purported failure to plead a cause of action sufficient to support entry of default judgment, and we conclude that those arguments are without merit.

III.  Voidness for Lack of Personal Jurisdiction

The defendants contend that even if the district court did not commit any procedural error in its entry of default judgment during the Rule 55(b)(2) proceedings, the default judgment is nonetheless "void" because the district court lacked personal jurisdiction ab initio.  The defendants assert that both a correct application of the New York long-arm statute, C.P.L.R. § 302(a)(3)(ii), and principles of constitutional due process under the Fifth and Fourteenth Amendments require us to hold that personal jurisdiction was absent here, even as a prima facie matter, and that the district court's repeated determinations to the contrary were in error.  Because we conclude that the defendants forfeited their jurisdictional defense, and therefore

51

the district court's assertion of personal jurisdiction over them was proper, we reject the defendants' voidness argument.

A.  Governing Law

A default judgment is "void" if it is rendered by a court that lacks jurisdiction over the parties.  See "R" Best Produce, 540 F.3d at 123 (citing In re Texlon Corp., 596 F.2d 1092, 1099 (2d Cir. 1979)); Covington Indus., Inc. v. Resintex A.G., 629 F.2d 730, 732 (2d Cir. 1980).

Had the defendants asserted their voidness argument before the district court in the first instance, they might have done so pursuant to Rule 60(b)(4).  That rule provides:  "On motion and just terms, the court may relieve a party . . . from a final judgment . . . [if] the judgment is void."  Fed. R. Civ. 60(b)(4); see "R" Best Produce, 540 F.3d at 122-23 (explaining that a defendant seeking to challenge a default judgment for lack of personal jurisdiction may proceed under Rule 60(b)(4)).  We therefore find it appropriate to consider our precedent governing Rule 60(b)(4) motions.

"A judgment is void under Rule 60(b)(4) of the Federal Rules of Civil Procedure . . . 'if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" Grace, 443 F.3d at 193 (quoting In re Texlon Corp., 596 F.2d at 1099).  "'Whereas we generally review motions pursuant to the

52

provisions of Rule 60(b) for abuse of discretion, we review de novo a district court's denial of a Rule 60(b)(4) motion.'" Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005) (quoting State St. Bank & Trust Co., 374 F.3d at 178). That is because, if the underlying judgment is void for lack of jurisdiction, "it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." Id. (internal quotation marks omitted); accord Spamhaus Project, 500 F.3d at 598. "'[T]he judgment is either void or it is not.'" Cent. Vt. Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 189 (2d Cir. 2003) (quoting Recreational Props., Inc. v. Sw. Mortg. Serv. Corp., 804 F.2d 311, 314 (5th Cir. 1986)).

B.    Analysis

The procedural history of this case is dispositive of our voidness analysis. The district court may have erred in its determination that the City had made a prima facie showing of personal jurisdiction over each of the defendants, for the reasons discussed in Judge Wesley's concurring opinion. But we have already concluded that by appearing, litigating, and then intentionally withdrawing from the proceedings, the defendants forfeited their jurisdictional defense. As a result, the defendants submitted to the jurisdiction of the district court. The default judgment that the court rendered was thus supported by personal jurisdiction and is not void.

The defendants appear to assume that a default judgment is void for lack of personal jurisdiction even where a defendant's litigation tactics before the district court were inconsistent with the preservation of its jurisdictional defense. The defendants also appear to rely on the well-established principle that a defendant who does not answer a complaint in the first instance, and later suffers a default judgment to be entered against it, may subsequently challenge the default judgment as void for lack of personal jurisdiction.

The defendants overlook the critical distinction between defendants who "appear" in court -- even if only to challenge the court's jurisdiction -- and those who do not. See Sinoying Logistics, 619 F.3d at 213. A non-appearing defendant does not, by defaulting, forfeit its right to challenge any ensuing default judgment for lack of personal jurisdiction. "A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." Ins. Corp. of Ireland, 456 U.S. at 706; see also "R" Best Produce, 540 F.3d at 123; Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 160 (2d Cir. 2005), cert. denied, 547 U.S. 1175 (2006); Transaero, 162 F.3d at 729; Restatement (Second) of Judgments § 65 cmt. b. In such a case, "voidness of a judgment for lack of

54

personal jurisdiction can be asserted on a collateral challenge" pursuant to Rule 60(b)(4).  "R" Best Produce, 540 F.3d at 123.

But "when a defendant appears and challenges jurisdiction," we interpret that to constitute "it[s] agree[ment] to be bound by the court's determination on the jurisdictional issue."  Transaero, 162 F.3d at 729; see Ins. Corp. of Ireland, 456 U.S. at 706 ("By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction."); cf. SEC v. Ross, 504 F.3d 1130, 1150 (9th Cir. 2007) (defendant-intervener does not, through Rule 24(a) intervention, consent to personal jurisdiction, but does "consent[] to have the district court determine all issues in the case, including issues of jurisdiction").  Although an appearing defendant may, if it disagrees with the district court's threshold ruling on personal jurisdiction, seek reversal of that ruling on appeal, the defendant must properly preserve its defense for appellate review.

Both Adventure Outdoors and Mickalis Pawn were "appearing" defendants.  Both retained counsel who filed notices of appearance on their behalf.  Both challenged the City's pleadings with two rounds of Rule 12(b) motions.  Adventure Outdoors continued to litigate the case through summary judgment; Mickalis Pawn, though it withdrew prior to the close of discovery, nonetheless "appeared [and] defended vigorously" over

55

the course of "about two years of active litigation." Opening Br. of Mickalis Pawn at 4. By submitting to the jurisdiction of the district court to decide the question of personal jurisdiction -- but then withdrawing from the proceedings, rather than litigating the case to final judgment -- the defendants failed to preserve their jurisdictional defense for review on appeal. And because they failed to preserve that defense, they acquiesced to the jurisdiction of the district court, and the resulting judgment of that court is not void.[24]

We recognize that even where a defense has been forfeited, appellate review is not necessarily foreclosed. "[T]his Court has discretion to decide the merits of a forfeited claim or defense where the issue is purely legal and there is no

---

[24] Some of the parties' submissions on appeal assume that our review of the defendants' challenge to the default judgment is governed by a three-factor balancing test. To be sure, district and appellate courts considering whether to grant relief from a default judgment under Rule 60(b) ordinarily consider three criteria: "'(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" Green, 420 F.3d at 108 (quoting State St. Bank & Trust Co., 374 F.3d at 166-67). But that framework assumes that the defendant in question seeks to be restored to its pre-default position, thereby permitting the resolution of the dispute on its merits. Here, by contrast, the defendants seek not to re-open this case for further litigation; rather, they urge that this lawsuit be dismissed altogether. See Opening Br. of Mickalis Pawn at 30 (requesting that "the matter [be] dismissed"); Opening Br. of Adventure Outdoors at 61 (urging that this case be remanded "with instructions to dismiss"). Moreover, the "voidness" vel non of a judgment is not a matter subject to discretion. We conclude that these considerations render inapposite the standard three-factor discretionary test in this instance.

need for additional fact-finding or where consideration of this issue is necessary to avoid manifest injustice." Patterson v. Balsamico, 440 F.3d 104, 112 (2d Cir. 2006) (internal quotation marks omitted). However, we will not excuse the defendants' forfeiture in this instance, where there is every indication that the defendants' default was not the product of inadvertence, but a deliberate tactic instead. We will not allow the defendants to "escape the consequences" of their strategic decisions simply because they have proven to be disadvantageous to them. Spamhaus Project, 500 F.3d at 600; cf. LNC Invs., Inc. v. Nat'l Westminster Bank, 308 F.3d 169, 176 n.8 (2d Cir. 2002) (noting that "[i]t would be particularly unusual" to "address an argument despite its abandonment on appeal . . . . where the abandonment appears, as it does here, to be a strategic choice rather than an inadvertent error"), cert. denied, 538 U.S. 1033 (2003).

Our decision not to excuse the forfeiture is also informed by our respect for the limits of our own jurisdiction -- limits that the defendants sought to evade through their strategic decisions to default.

The core of our appellate jurisdiction is to review "final decisions" of the district courts. See 28 U.S.C. § 1291. With limited exceptions, see generally Myers v. Hertz Corp., 624 F.3d 537, 552 (2d Cir. 2010), only final orders and judgments may be appealed, see Cruz v. Ridge, 383 F.3d 62, 64 (2d Cir. 2004)

57

(per curiam). "[T]he general rule [is] that a party is entitled to a single appeal, to be deferred until final judgment has been entered." Mohawk Indus., Inc. v. Carpenter, 130 S. Ct. 599, 605 (2009) (internal quotation marks omitted).

In including a requirement of finality in defining the scope of our jurisdiction under 28 U.S.C. § 1291, Congress "'express[ed] a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by piecemeal appellate review of trial court decisions which do not terminate the litigation.'" In re World Trade Ctr. Disaster Site Litig., 521 F.3d 169, 178 (2d Cir. 2008) (quoting Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 430 (1985)). Denials of dispositive motions are therefore not ordinarily appealable on an interlocutory basis. See, e.g., Napoli v. Town of New Windsor, 600 F.3d 168, 170 (2d Cir. 2010) (per curiam).

We cannot permit the defendants to short-circuit the normal litigation process by withdrawing, inducing a default judgment to be entered against them, and then obtaining de facto interlocutory review over otherwise non-appealable decisions. We have observed, with respect to similar strategic conduct by plaintiffs:

> [I]f a litigant could refuse to proceed
> whenever a trial judge ruled against him, wait
> for the court to enter a dismissal for failure
> to prosecute, and then obtain review of the

judge's interlocutory decision, the policy against piecemeal litigation and review would be severely weakened. This procedural technique would in effect provide a means to avoid the finality rule embodied in 28 U.S.C. § 1291.

Moreover, if a party who was disappointed by an interlocutory ruling could obtain an appeal of that ruling by simply refusing to prosecute his or her lawsuit, adherence to the merger rule[25] would reward that party for dilatory and bad faith tactics. Such a result would conflict with the purpose of a Rule 41(b) dismissal for failure to prosecute, which is to penalize dilatoriness and harassment of defendants.

Shannon v. Gen. Elec. Co., 186 F.3d 186, 192 (2d Cir. 1999) (brackets, ellipsis, citations, and internal quotation marks omitted; footnote added); see also Rabbi Jacob Joseph Sch. v. Province of Mendoza, 425 F.3d 207, 210-11 (2d Cir. 2005); Martens v. Thomann, 273 F.3d 159, 183 (2d Cir. 2001).

The same concerns arise here. To overlook the defendants' forfeiture would be to "permit[] . . . an end-run around the final judgment rule."[26] Palmieri v. Defaria, 88 F.3d

---

[25] The "merger rule" holds that "[w]hen a district court enters a final judgment in a case, interlocutory orders rendered in the case . . . merge with the judgment," thereby rendering them amenable to appellate review. Shannon, 186 F.3d at 192.

[26] Mickalis Pawn's default also prejudiced the City's ability to obtain further discovery related to personal jurisdiction. Cf. Ins. Corp. of Ireland, 456 U.S. at 707-09; S. New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 146 (2d Cir. 2010) (observing "that it does not violate due process for a district court to impose under Rule 37(b) an order subjecting a party to personal jurisdiction in that court as a sanction for the party's failure to comply with a discovery order seeking to establish facts relating to the court's personal jurisdiction

59

136, 140 (2d Cir. 1996).  But see Savin v. Ranier, 898 F.2d 304, 307 (2d Cir. 1990) (reviewing, on appeal from default judgment, the merits of appearing defendant's jurisdictional defense, where plaintiff did not claim that defendant had forfeited that defense by defaulting).

We also decline to overlook the defendants' forfeiture based on their assertion that they suffered grave financial hardship by being forced to defend a lawsuit in New York.  The defendants appear to contend that it would be unfair to expect them to have waited until after trial to seek appellate review of the district court's adverse interlocutory decisions concerning personal jurisdiction.  Citing Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc., 740 F.2d 1499 (11th Cir. 1984), they urge that the district court's decision to delay final adjudication of their jurisdictional defense until trial "put [them] in the uncomfortable position of having to prepare for a full-blown trial even if [they] might eventually prevail on the jurisdictional claim," id. at 1511.

We are not without sympathy for these sentiments, nor do we necessarily disagree with Judge Wesley's conclusion that the district court erred in its jurisdictional analysis.  But the Supreme Court has made clear that "the possibility that a ruling may be erroneous and may impose additional litigation expense" is

over it").

not a sufficient basis for affording appellate review over interlocutory decisions.  Richardson-Merrell, 472 U.S. at 436.

IV.    The Injunctions

We review the district court's issuance of a permanent injunction for abuse of discretion.  See Third Church of Christ, Scientist v. City of New York, 626 F.3d 667, 669 (2d Cir. 2010).

A.    The Terms of the Injunctions

Simultaneously with entry of a default judgment, the district court imposed separate, but substantively identical, permanent injunctions to "abate the public nuisance" caused by Adventure Outdoors and Mickalis Pawn.  Mickalis Pawn Inj., 2009 WL 792042, ¶ 1; Adventure Outdoors Inj., 2009 WL 792023, ¶ 1 (same).  The injunctions provide for the appointment of a special master (the "Special Master") to implement, and monitor the defendants' compliance with, certain remedial measures contemplated by the injunctions.  Mickalis Pawn Inj., 2009 WL 792042, ¶ 2.

Paragraph 3 of each injunction provides, with respect to the duties of the Special Master:

> It will be the responsibility of the Special Master to ensure, to the fullest extent practicable, that from the effective date of this [injunction] forward, firearms sales by [the defendant] are made in full conformity with applicable laws pertaining to firearms and that [the defendant] adopts appropriate prophylactic measures to prevent violation of the firearms laws.

61

Id. ¶ 3.[27]  Paragraph 7 of each injunction mandates that

> [the defendant] shall adopt those practices that in the opinion of the Special Master serve to prevent in whole or in part[28] the illegal sale of firearms. [The defendant] shall also adopt those prophylactic practices that in the opinion of the Special Master will serve to prevent the movement of guns into the illegal market.

Id. ¶ 7 (footnote added).

The injunctions contemplate several ways by which the defendants may become subject to penalties. First, any participation by the defendants in a "straw purchase" -- or any sale "otherwise in violation of Federal, State, or local law or regulation," as determined by the Special Master -- constitutes a violation punishable by a fine that increases with each successive violation.[29]  Id. ¶ 12.  The term "straw purchase" is defined as including "[a] sale . . . made to an investigator conducting a 'Simulated Straw Purchase,' which shall mean a purchase in a form substantially as described in the Amended Complaint filed in this action, for example, in paragraph 188."

[27] The injunctions specify certain methods to be used in monitoring the defendants' compliance, including in-store observation, videotape surveillance, records monitoring, "random and repeated integrity testing," inventory inspections, and instructional training for the defendants' employees. Mickalis Pawn Inj., 2009 WL 792042, ¶ 4.

[28] The phrase "in whole or in part" appears only in the Mickalis Pawn injunction. Compare Mickalis Pawn Inj., 2009 WL 792042, ¶ 7, with Adventure Outdoors Inj., 2009 WL 792023, ¶ 7.

[29] The injunctions require each defendant to post a $ 25,000 bond with the district court; any monetary penalties imposed for violations of the injunctions would be drawn from this sum. Mickalis Pawn Inj., 2009 WL 792042, ¶¶ 11-12.

Id. ¶ 13(iii).  The injunctions also provide, more generally, that any other "[a]ction[] . . . by which [the defendant] seeks to evade any of the requirement[s]" of the injunction constitutes a violation.  Id. ¶ 8.  Finally, any failure by the defendants "to cooperate with the Special Master," as determined by the Special Master himself, constitutes a violation.  Id.

If the defendants fully comply with the foregoing terms, each injunction terminates automatically after three years.  Id. ¶ 17.  Any violation of the injunction, however -- or any "violation of an applicable firearms law or regulation" certified to have occurred by the Special Master -- "will re-commence the running of the three-year Compliance Period from the date of the violation."  Id. ¶ 18.

B.   Governing Law

The defendants did not, by defaulting, forfeit the right to challenge the lawfulness of the injunctions.  See Finkel, 577 F.3d at 83 n.6; Brock, 786 F.2d at 65; see also Spamhaus Project, 500 F.3d at 603-04 (vacating permanent injunction imposed after default judgment as violative of Rule 65(d)); SEC v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975) (vacating permanent injunction imposed after default judgment).

In appealing the injunctions entered against them, the defendants principally argue that the injunctions are unconstitutionally vague and that they violate the requirements

63

of Federal Rule of Civil Procedure 65(d). We review de novo whether the injunctions comply with Rule 65(d). See Garcia v. Yonkers Sch. Dist., 561 F.3d 97, 103 (2d Cir. 2009).

Rule 65(d) provides that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail -- and not by referring to the complaint or other document -- the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). We have interpreted Rule 65(d) as requiring that "an injunction . . . be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 240-41 (2d Cir. 2001) (internal quotation marks omitted). The Supreme Court has explained:

> [T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood. Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.

Schmidt v. Lessard, 414 U.S. 473, 476 (1974) (footnotes and citations omitted). Rule 65(d) is satisfied "only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required." Petrello v. White, 533 F.3d 110, 114 (2d Cir. 2008) (internal quotation marks omitted).

Rule 65(d) is said to serve two general purposes: "to prevent uncertainty and confusion on the part of those to whom the injunction is directed," and to ensure "that the appellate court knows precisely what it is reviewing." S.C. Johnson & Son, 241 F.3d at 241 (internal quotation marks omitted); see also Schmidt, 414 U.S. at 476-77; Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) (per curiam), cert. denied, 534 U.S. 833 (2001). We have cautioned that injunctions that do not satisfy the requirements of Rule 65(d) "will not withstand appellate scrutiny." Corning Inc. v. PicVue Elecs., Ltd., 365 F.3d 156, 158 (2d Cir. 2004) (per curiam) (internal quotation marks omitted).

In addition to complying with Rule 65(d)'s specificity requirements, district courts must take care to ensure that injunctive relief is not overbroad. Although a district court has "a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct," it is nonetheless "the essence of equity jurisdiction" that a court is only empowered "to grant relief no broader than necessary to cure the effects of the harm caused by the violation." Forschner Grp., Inc. v. Arrow Trading Co., 124 F.3d 402, 406 (2d Cir. 1997) (internal quotation marks omitted). We have instructed that injunctive relief should be "narrowly tailored to fit specific legal violations," Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 50 (2d Cir. 1996) (internal quotation marks omitted), and that the court must "mould each decree to the necessities of the

particular case," Forschner Grp., 124 F.3d at 406 (internal quotation marks omitted); see also Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 220 (2d Cir. 2003); Brooks v. Giuliani, 84 F.3d 1454, 1467 (2d Cir.), cert. denied, 519 U.S. 992 (1996); Waldman Publ'g Corp. v. Landoll, Inc., 43 F.3d 775, 785 (2d Cir. 1994). An injunction may not "enjoin 'all possible breaches of the law.'" John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 588 F.2d 24, 30 (2d Cir. 1978) (quoting Hartford-Empire Co. v. United States, 323 U.S. 386, 410 (1945)).

C.   Analysis

We agree with the defendants that several portions of the injunctions are insufficiently specific or overbroad, or otherwise violate Rule 65(d).

First, the injunctions impose on defendants an obligation to act "in full conformity with applicable laws pertaining to firearms," and to "adopt[] appropriate prophylactic measures to prevent violation" of those laws, without specifying which laws are "applicable" or identifying the ways in which the defendants must alter their behavior to comply with those laws. Mickalis Pawn Inj., 2009 WL 792042, ¶ 3; see also id. ¶ 17 (requiring "full compliance" with "applicable firearms laws and regulations"). A directive to undertake "appropriate" measures does not "describe in reasonable detail . . . the act or acts restrained or required," Fed. R. Civ. P. 65(d)(1), nor does it provide "explicit notice of precisely what conduct is outlawed," Schmidt, 414 U.S. at 476. Indeed, we have said that to comply

with Rule 65(d), "an injunction must be more specific than a simple command that the defendant obey the law." Peregrine Myanmar Ltd., 89 F.3d at 51.

Second, it appears that the injunctions, fairly read, prohibit not only "straw purchases" -- the sole kind of illegal practice identified in the City's amended complaint -- but other, unidentified types of sales practices as well. An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation. See Lineback v. Spurlino Materials, LLC, 546 F.3d 491, 504 (7th Cir. 2008) (noting that an injunction is overbroad if it results in a "likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful" (internal quotation marks omitted)); Spamhaus Project, 500 F.3d at 604 (vacating injunction that "fail[ed] to comply with the rule requiring courts to tailor injunctive relief to the scope of the violation found" (internal quotation marks omitted)).

The injunctions are also problematic because of the extent to which they vest the Special Master with discretion to determine the terms of the injunctions themselves. Paragraph 7 of each injunction requires the defendants to "adopt those practices that in the opinion of the Special Master serve to prevent in whole or in part the illegal sale of firearms" and "adopt those prophylactic practices that in the opinion of the Special Master will serve to prevent the movement of guns into

67

the illegal market." Mickalis Pawn Inj., 2009 WL 792042, ¶ 7 (emphases added). A defendant's "failure to cooperate with the Special Master" constitutes a violation. Id. ¶ 8. Moreover, the injunctions provide that any dispute as to whether a violation has occurred, or any disagreements concerning decisions made by the Special Master, are to be resolved by the Special Master himself in the first instance. Id. ¶ 9. Although a party may appeal "any decision or practice of the Special Master" to the district court, the Special Master's decisions are made subject only to "arbitrary and capricious" review. Id. The injunctions further specify that if a defendant is unsuccessful in challenging the Special Master's decision, the defendant "shall pay the Special Master's costs and attorneys' fees." Id. ¶ 10.

"The power of the federal courts to appoint special masters to monitor compliance with their remedial orders is well established," United States v. Yonkers Bd. of Educ., 29 F.3d 40, 44 (2d Cir. 1994), cert. denied, 515 U.S. 1157 (1995), and a special master possesses some power to "determine the scope of his own authority," Bridgeport Guardians, Inc. v. Delmonte, 537 F.3d 214, 219 (2d Cir. 2008). But the Supreme Court has also warned that "[t]he use of masters is to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause, and not to displace the court." La Buy v. Howes Leather Co., 352 U.S. 249, 256 (1957) (citation and internal quotation marks omitted). Serious constitutional

68

questions arise when a master is delegated broad power to determine the content of an injunction as well as effectively wield the court's powers of contempt. "If the master makes significant decisions without careful review by the trial judge, judicial authority is effectively delegated to an official who has not been appointed pursuant to article III of the Constitution." Meeropol v. Meese, 790 F.2d 942, 961 (D.C. Cir. 1986).

Constitutional questions aside, we conclude that, at the very least, the injunctions' sweeping delegations of power to the Special Master violate Rule 65(d). "A court is required to frame its orders so that those who must obey them will know what the court intends to forbid." Diapulse Corp. of Am. v. Carba, Ltd., 626 F.2d 1108, 1111 (2d Cir. 1980) (emphasis added); see also United States v. Microsoft Corp., 147 F.3d 935, 954 (D.C. Cir. 1998) (concluding that injunction was improper insofar as "the parties' rights must be determined, not merely enforced," by special master).

Finally, Paragraph 13(iii) of each injunction prohibits certain conduct by reference to the amended complaint. This drafting technique, however efficient, is expressly prohibited by Rule 65(d), which provides that "[e]very order granting an injunction" must "describe in reasonable detail -- and not by referring to the complaint or other document -- the act or acts

restrained or required." Fed. R. Civ. P. 65(d)(1)(C) (emphasis added).

The City defends the injunctions principally on the basis that "[t]wenty other firearms dealers have entered into negotiated settlement agreements with the City under virtually the same terms." Opening Br. of City (Adventure Outdoors' Appeal) at 58; see also Opening Br. of City (Mickalis Pawn's Appeal) at 57. But there is an obvious difference between settlement agreements, which are voluntary contracts freely negotiated between parties, and injunctions, which are unilateral directives backed by a court's powers of contempt. Parties may consent to settlement terms that would otherwise, if imposed unilaterally, violate Rule 65(d) or a defendant's due process rights. See, e.g., SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1479 (2d Cir. 1996), cert. denied, 522 U.S. 812 (1997); Stauble v. Warrob, Inc., 977 F.2d 690, 698 (1st Cir. 1992). The fact that other defendants were willing to settle voluntarily with the City on essentially the same terms as those included in the injunctions does not tend to prove, let alone itself establish, that the injunctions comply with the Federal Rules and comport with due process.[30]

---

[30] We reject, however, the defendants' argument that the injunctions violate principles of state sovereignty, comity, and federalism. To be sure, "[t]he court's discretion to frame equitable relief is limited by considerations of federalism," Knox v. Salinas, 193 F.3d 123, 129-30 (2d Cir. 1999) (internal

We have carefully considered the other arguments made by the parties concerning the injunctions and find them to be without merit.

**CONCLUSION**

For the foregoing reasons, we affirm the entry of default judgment against Mickalis Pawn and Adventure Outdoors, but vacate the injunctions issued against them and remand the matter to the district court for further proceedings.

---

quotation marks omitted), and "[a] State cannot punish a defendant for conduct that may have been lawful where it occurred," State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 421 (2003).  However, it is also true that "[t]he federal court sitting as a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere."  Bano v. Union Carbide Corp., 361 F.3d 696, 716 (2d Cir. 2004) (internal quotation marks omitted); see also Steele v. Bulova Watch Co., 344 U.S. 280, 289 (1952) ("[T]he District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction.");  New Jersey v. City of New York, 283 U.S. 473, 482 (1931).  Here, the defendants have identified no authority for the proposition that a court in New York may not restrain a defendant in Georgia or South Carolina from violating U.S. federal firearms laws, which are of course binding in both jurisdictions.  Nor have the defendants demonstrated that Georgia and South Carolina law is materially different than New York law in relevant respects.

71

WESLEY, *Circuit Judge*, concurring:

I join the majority's opinion in full.  I write separately to express concerns with the jurisdictional analysis conducted by the court below.  While I fully agree with the majority's conclusion that this affirmative defense was waived, I am concerned that others might embrace the district court's jurisdictional analysis.  In my view, that would be a mistake because the district court's jurisdictional analysis has no basis in New York law.

The claims brought by the City of New York against defendants Mickalis Pawn Shop, LLC and Adventure Outdoors, Inc. were pled as torts under New York law.  *See* N.Y. Penal Law §§ 240.45, 400.05(1).  The district court's subject matter jurisdiction was grounded in 28 U.S.C. § 1332(a)(1).  Therefore, the court was permitted to "exercise personal jurisdiction to the same extent as the courts of general jurisdiction" in the State of New York.  *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).  And yet, the district court devised a test that has no basis in the New York statute governing long-arm jurisdiction.[1]  *See* N.Y. C.P.L.R. § 302(a)(3)(ii).  In my

_____

[1] This appeal concerns only two defendants among many implicated by a "series of civil cases brought by the City

view, the court had no authority to apply a novel jurisdictional test that created an unwarranted expansion of the meaning of personal jurisdiction under New York law.

The district court termed this case one of "first impression" and created, out of whole cloth, a seven-factor test for determining whether personal jurisdiction exists over "retail gun establishments." *City of New York v. A-1 Jewelry & Pawn, Inc.*, 501 F. Supp. 2d 369, 374, 424 (E.D.N.Y. 2007) (Weinstein, *J.*).  This case, however, is not one of first impression.  In fact, this particular federal judge has decided a number of other cases involving the firearms industry in which he has declined to apply the long-arm statute as interpreted by the New York Court of Appeals.  *See, e.g., Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 397 (E.D.N.Y. 2004) (Weinstein, *J.*); *N.A.A.C.P. v. A.A. Arms, Inc.*, Nos. 99 Civ. 3999, 99 Civ. 7037, 2003 WL 21242939, at *4 (E.D.N.Y. Apr. 1, 2003) (Weinstein, *J.*).  And, in any event, federally licensed out-of-state firearms distributors, such as defendants in this case, are governed

---

of New York" before this district court. *City of N.Y. v. Bob Moates' Sport Shop, Inc.*, 253 F.R.D. 237, 238 (E.D.N.Y. 2008) (Weinstein, *J.*).

by the same long-arm statute as are all other out-of-state defendants alleged to have committed a tortious act outside of New York that causes injury in the State of New York.

On August 8, 2006, following limited discovery, defendants moved to dismiss the complaint against them for lack of personal jurisdiction.  By an order dated August 15, 2007, the district court denied defendants' motion to dismiss.  *A-1 Jewelry & Pawn*, 501 F. Supp. 2d at 374.  In declining to grant defendants' motion to dismiss, the district court applied a test to assess whether defendants were properly subject to personal jurisdiction not previously employed by a New York court.  The district judge appears to be of the view that there should be no limits on the exercise of personal jurisdiction over a defendant "except those of reasonable forum (venue) and a rational state interest in the litigation."[2]  Jack B. Weinstein, *Mass*

---

[2] Judge Weinstein has acknowledged in his academic writing that "New York's long-arm statute, unlike that of most states, has not been interpreted as going to the constitutional limit[]."  Jack B. Weinstein, *Mass Tort Jurisdiction and Choice of Law in a Multinational World Communicating by Extraterrestrial Satellites*, 37 Willamette L. Rev. 145, 148 (2001).  Judge Weinstein is, however, critical of New York's long-arm statute because, in his view, it "inhibit[s] the expansion of personal jurisdiction to its full potential" and its limitations "should be

*Tort Jurisdiction and Choice of Law in a Multinational World Communicating by Extraterrestrial Satellites*, 37 Willamette L. Rev. 145, 146 (2001).  Specifically, the district court concluded that defendants' "knowing cumulative illegal parallel conduct outside New York causing widespread injury in New York made them amenable to suit in" New York.  501 F. Supp. 2d at 374.  The court asserted that "the extent of the combined harm" could provide a basis for the exercise of personal jurisdiction over each individual defendant, even if the allegedly illegal out-of-state conduct of a single defendant would not suffice to establish jurisdiction.  *Id.* at 422.  The district court took the view that "[w]here a defendant deals in [] inherently dangerous products, a lesser showing than is ordinarily required will support jurisdiction."  *Id.* at 420 (internal quotation marks omitted).

Prior to defendants' default, the City filed an amended complaint, which sought injunctive relief against defendants for the creation of a public nuisance.  *See* N.Y. Penal Law §§ 400.05(1), 240.45.  Defendants then made a renewed motion

---

eliminated."  *Id.* at 149.

to dismiss in which they reasserted their objection to the exercise of personal jurisdiction to no avail.[3] *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 338 (E.D.N.Y. 2007). In denying defendants' renewed motion to dismiss, the district court again relied, in part, on the allegedly "knowing parallel conduct" of the defendants. *Id.* at 336. The district court implied that, perhaps, a different standard for assessing personal jurisdiction was warranted because jurisdiction was "sought . . . not simply to vindicate an individual right or to resolve an individual commercial dispute" but rather was "sought to protect the safety of an entire community." *Id.* at 339.

While the district judge below may take issue with the limitations placed on New York's long-arm statute as an academic matter, these limitations "were deliberately inserted to keep the provision well within constitutional bounds," *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997), and a federal district court is not free to read them out of the statute. In addition, the exercise of personal jurisdiction

---

[3] Defendant Adventure Outdoors also filed an unsuccessful motion for summary judgment based in part on its contention that it was not properly subject to the district court's exercise of personal jurisdiction.

over these defendants does not, in my view, "comport[] with the requirements of due process." *Met. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citing *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990)).

In evaluating whether personal jurisdiction exists as to a particular defendant the court must examine the "quality and nature" of the defendant's contacts with the forum. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242-43 (2d Cir. 2007). Here, the defendants' connection to the forum was tenuous at best.[4] Defendants did not "transact[] any business within the state or contract[] . . . to supply goods . . . in the state," N.Y. C.P.L.R. § 302(a)(1), and defendants did not commit any tortious act in New York State, *id.* § 302(a)(2). More to the point, nothing in the record supports the conclusion that they conducted or solicited business in New York or that they "engage[d] in any other persistent course of conduct, or derive[d] substantial revenue from goods used . . . in the state." *Id.* § 302(a)(3)(i).

---

[4] As characterized by the City, defendant Adventure Outdoors is a "storefront establishment in Smyrna, Georgia" and defendant Mickalis Pawn Shop is "a store in Summerville, South Carolina."

There is nothing in the record that supports the conclusion that defendants knew or should have known that sales of guns in their home states were having consequences in New York.  *Id.* § 302(a)(3)(ii).  Moreover, section 302(a)(3)(ii) provides that in order to form the basis for the exercise of personal jurisdiction over a non-domiciliary, the defendant must know (or be deemed to know) of the consequences of its conduct *and* "derive[] substantial revenue from interstate or international commerce."  *Id.* Here, even if we were to impute knowledge to the defendants, the record does not reveal anything approaching "substantial revenue" that could be said to have resulted from guns that made their way to New York.  The conjunctive requirement present in section 302(a)(3)(ii) could be understood to be constitutionally mandated.  As the Supreme Court has explained, "foreseeability alone has never been a sufficient benchmark for personal jurisdiction."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (internal quotation marks omitted).  To the contrary, a "defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act

-7-

purposefully directed toward the forum State."  *Asahi Metal Indus. v. California*, 480 U.S. 102, 112 (1987).

The district court concluded that when a defendant deals in inherently dangerous products a lesser showing is required in order to establish personal jurisdiction. However, neither the New York Court of Appeals nor this Court have ever so held.[5]  If the City "could satisfy the requirements of [section 302(a)(3)(ii)] on so attenuated a consequence of defendant[s'] act[s] as has been accepted by the court[] below, it would burden unfairly non-residents whose connection with the state is remote."  *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 327 (1980).

A particularly troubling aspect of the jurisdictional analysis conducted below is the reliance on what the district judge termed the defendants' "cumulative parallel conduct" as a basis for establishing personal jurisdiction.

---

[5] As a substantive matter, the New York Court of Appeals has rejected the argument that a "general duty of care arises out of [a] gun manufacturer['s] ability to reduce the risk of illegal gun trafficking through control of the marketing and distribution of [its] products." *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 235 (2001). The hazardous materials doctrine, which is based on a products liability theory, *id.*, does not support the loosening of the requirements for establishing personal jurisdiction.

According to the district court's theory, although the "out-of-state activities of a single defendant alone may not suffice to establish jurisdiction," because of "knowing parallel conduct, the extent of the combined harm may provide a basis for jurisdiction over each one." 501 F. Supp. 2d at 422. The New York Court of Appeals has never adopted a theory pursuant to which combined or parallel conduct may be relied upon to establish a basis for the exercise of personal jurisdiction over a defendant when jurisdiction does not otherwise exist.

The New York Court of Appeals has instructed that "[t]o determine whether a non-domiciliary may be sued in New York, [the court must] first determine whether [New York's] long-arm statute . . . confers jurisdiction over [the non-domiciliary] in light of its contacts with [New York] State. If the defendant's relationship with New York falls within the terms of [section 302(a)(3)(ii)], [the court must then] determine whether the exercise of jurisdiction comports with due process." *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000). Rather than follow the instructions of the New York Court of Appeals, the district court created a seven-factor test for analyzing whether long-arm jurisdiction

exists over "retail gun establishments."[6] 501 F. Supp. 2d at 424.

The district court determined that an "inflexible application of a traditional jurisdictional analysis that fails to take account of unique practical commercial factors does not effectively insure the fair and orderly administration of the law." *Id.* at 419. The court preferred to adopt what it termed a "reality-based pragmatic

---

[6] As announced by the district court, these factors are as follows:

> 1) Number of "trace" handguns linked to criminal investigations in New York and elsewhere that are attributable to the defendant;
> 2) Distribution practices and their possible effects on crimes in New York;
> 3) Time-to-crime of the retailer's guns recovered in New York . . .;
> 4) Sales price, type of gun and the intended use of the retailer's handguns . . .;
> 5) Crimes committed in New York with the retailer's handguns;
> 6) Total number of handguns the retailer . . . sold in the United States and retailer's total revenue from the United States and New York markets; and
> 7) Actions of regulatory authorities related to the retailer's distribution practices . . . .

501 F. Supp. 2d at 424-25.

-10-

jurisdictional analysis." *Id.* However, the district court was not free to depart from "traditional jurisdictional analysis" in order to hold defendants subject to suit in New York. The "fair and orderly administration of the law" is best achieved by applying the same standards to all litigants and by adherence to well-defined legal principles.

The district court's jurisdictional analysis undermines the protection afforded to out-of-state defendants by section 302(a)(3)(ii). As both this Court and the New York Court of Appeals have previously explained, this provision "is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere." *LaMarca*, 95 N.Y.2d at 215 (quoting *Ingraham*, 90 N.Y.2d at 598). The relevant long-arm provision is specifically "designed to . . . preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but 'whose business operations are of a local character.'" *Id.* (quoting *Ingraham*, 90 N.Y.2d at 599). Here, it is indisputable that defendants' businesses are of a local character.

The district court also asserted that "[t]here is no

specific dollar threshold at which revenue becomes substantial for purposes of [section] 302(a)(3)(ii)."[7]  501 F. Supp. 2d at 417.  Even if this is so, it was error to excuse the City from making any showing that defendants derived substantial revenue from interstate commerce.  *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997).  Indeed, it "offend[s] 'traditional notions of fair play and substantial justice'" to subject a non-domiciliary defendant to jurisdiction when that defendant does not have the requisite "minimum contacts" with the forum state. *LaMarca*, 95 N.Y.2d at 216 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The record in this case is devoid of information that would allow anyone to

---

[7] Other courts have sensibly held that "[w]hether revenue is 'substantial' under New York law is determined on both relative and absolute scales."  *Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 316 (S.D.N.Y. 1986); *see also Vecchio v. S & T Mfg. Co.*, 601 F. Supp. 55, 57 (E.D.N.Y. 1984); *Allen v. Canadian Gen. Elec. Co.*, 410 N.Y.S.2d 707, 708-09 (3d Dep't 1978).  Adventure Outdoors asserts that "uncontroverted evidence demonstrates that over the six year period preceding the institution of this action, [it] derived an average of $3,619.89 from interstate or international commerce, constituting a paltry 0.36% of its overall revenue."  Mickalis Pawn Shop denies receiving any revenue from interstate sales and asserts that the City never alleged, or showed — and the trial court never found — "a sum certain amount of revenue" it allegedly derived from interstate commerce.

-12-

conclude that defendants had "meaningful 'contacts, ties, or relations'" with New York. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe*, 326 U.S. at 319)).

The seven-factor test for personal jurisdiction relies heavily on alleged conduct by third parties – specifically, straw purchasers of handguns — in establishing a basis for the assertion of jurisdiction. However, the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* at 474 (internal quotation marks omitted); *see also World-Wide Volkswagen*, 444 U.S. at 298. Rather, it is "essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted). Here, the City did not come forward with any evidence that defendants purposefully established any meaningful contacts with New York state.

The district court maintained that New York City has a strong interest in adjudicating this case, and that "[b]y

-13-

enacting strong gun control laws to protect its citizens from gun-related crimes New York has expressed a special public policy interest in the subject matter of this litigation." 501 F. Supp. 2d at 428, 429. It is indisputable that "New York has a strong interest in the safety of its residents and territory from handgun violence." *Id.* at 429; *see generally Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005). However, the City's efforts to "regulat[e] the illegal flow of handguns into its territory," 501 F. Supp. 2d at 429, cannot violate the due process rights of defendants it alleges played some attenuated role in the presence of illegal guns in New York City. As the Supreme Court has explained:

> [The limits on the exercise of personal jurisdiction over a defendant] are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. . . . Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a

-14-

valid judgment.

*World-Wide Volkswagen*, 444 U.S. at 294.  Here, although defendants are federally licensed to sell firearms, they are "small-town [stores that have] no on-going contacts with New York and [their] interstate activities [if any] are not the sort which make [them] generally equipped to handle litigation away from [their business] location[s]."  *Markham v. Anderson*, 531 F.2d 634, 637 (2d Cir. 1976) (internal quotation marks omitted).

In sum, the district court's analysis with respect to defendants' affirmative defense based on lack of personal jurisdiction was a substantial and unjustified deviation from well-known and easily understood principles of New York law.  The jurisdictional analysis performed by the court below appears to be based on one federal judge's view of how the law of New York ought to be constructed, rather than on how it is clearly delineated by statute and in the decisions of the state and federal courts.

By virtue of their default prior to trial, defendants waived their defense based on lack of personal jurisdiction. *See Transaero, Inc. v. La Fuerza Aera Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998).  Therefore, I join the majority's

well-written opinion.  But an affirmance here is not an endorsement of the jurisdictional analysis conducted below.  One's agreement or disagreement with the policies that animate liability rules for firearms retailers cannot bear on jurisdictional analysis.  The district court was bound to apply New York's long-arm statute, as clearly interpreted by the New York Court of Appeals.  The court below did not do so in this case.